[L. A. No. 29610. In Bank. Jan. 30, 1969.]

DEVON A. McCORKLE, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Roger Arnebergh, City Attorney, Bourke Jones and John A. Daly, Assistant City Attorneys, and Nowland C. Hong, Deputy City Attorney, for Defendant and Appellant.

Heily & Blase and Edward L. Lascher for Plaintiff and Respondent.

Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn, Leo M. O'Connor and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Respondent.

TOBRINER, J.—The City of Los Angeles appeals from a judgment of the Ventura County Superior Court imposing liability on the City in the amount of $45,000 for damages incurred by the plaintiff in a highway accident.

We granted a hearing in this court after decision by the Court of Appeal, First Appellate District, Division Four, because of a conflict among the various Courts of Appeal as to the proper interpretation and application of Government Code section 820.2 (governmental immunity for discretionary acts of public employees) in the light of *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], and *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465].[1]

Subsequent to our granting of a hearing in the instant case, we decided the case of *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]. *Johnson* resolved the conflicting decisions of the Courts of Appeal and formulated a definitive rationale for the application of Government Code section 820.2.

After a thorough examination of the present case, we con-

[1]*Compare Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312], *with Glickman* v. *Glasner* (1964) 230 Cal.App.2d 120 [40 Cal.Rptr. 719].

clude that the Court of Appeal has correctly resolved the governmental immunity question by applying the rationale subsequently embraced by this court in *Johnson*. Furthermore, in our judgment, the Court of Appeal has correctly decided the other issues pertinent to the proper disposition of this case. Accordingly, the opinion of the Court of Appeal, authored by Justice Rattigan and concurred in by Presiding Justice Devine and by Justice Christian, is adopted (with minor alterations) as and for the opinion of this court. The opinion (with appropriate deletions and additions as indicated) is as follows:[2]

Plaintiff sued several defendants for damages incurred in two separate highway accidents. The jury's verdict was in his favor and against the City of Los Angeles alone. [ ]

In the first accident, plaintiff's automobile collided with a vehicle driven by Edgar D. Phillips. Shortly thereafter Michael A. Lombardo, an officer of the Los Angeles Police Department, arrived at the scene and commenced to investigate the collision. The second accident occurred when plaintiff, while on foot with Lombardo during the investigation, was struck by an automobile operated by Sam C. Wells.

The accidents occurred on October 2, 1962. Plaintiff commenced the action on May 22, 1963, alleging that negligence on the part of Phillips, Lombardo and Wells had proximately caused certain injuries and damages. The original complaint named as defendants these three, each by his true name, and "Does I through VIII, inclusive." The City was not named as a defendant, but was referred to by name in the complaint as Lombardo's employer and as the recipient of a verified claim for damages in which plaintiff asserted Lombardo's negligence. (This claim is not involved on the appeal.)

Defendants Wells, Lombardo and Phillips were served with summons, and with the original complaint, immediately; the City was not. Wells and Phillips answered the complaint. Lombardo filed general and special demurrers which, on July 11, 1963, were sustained with leave to amend within 15 days.

[2]Brackets together, in this manner [], without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions, with or without deletions, by this court. In employing this use of brackets we adhere to a method of adoption employed by us in the past. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 517 & fn. 3 [67 Cal. Rptr. 761, 439 P.2d 889]; *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383 & fn. 1 [19 Cal.Rptr. 662, 369 P.2d 262]; *People* v. *Lyons* (1956) 47 Cal.2d 311, 314 & fn. 1 [303 P.2d 329].

The complaint was not amended until December, when plaintiff obtained from the trial court an *ex parte* order permitting the filing of a first amended complaint naming the City as defendant "Doe I." This was on December 20, 1963. The first amended complaint was filed, and an alias summons addressed to the City was issued, on the same day. When both were served on the City, it moved to quash the service upon the ground that the trial court lacked jurisdiction of the City's person.[3]

At the same time, defendant Lombardo moved for an order dismissing the action as against him, upon the ground (Code Civ. Proc., § 581, subd. 3) that the original complaint had not been amended within 15 days after—and as permitted in—the order of July 11, 1963, sustaining his demurrers. Lombardo also moved to strike the first amended complaint because he had not been given notice of plaintiff's application for the order permitting the pleading to be filed.

The trial court granted Lombardo's motion to dismiss and ruled that his motion to strike was thereby rendered moot. The City's motion to quash was denied. The City did not seek appellate review of the order of denial, but filed an answer to the first amended complaint. The answer alleged as an affirmative defense that plaintiff had been contributorily negligent.

The case went to trial against the City, Wells and Phillips as defendants. During the trial, plaintiff settled with Phillips and dismissed the action as to him. The jury's verdict was in favor of Wells, but for plaintiff and against the City in the amount of $45,000.

■ Appealing from the judgment, the City first contends that the trial court erred in denying its motion to quash service of summons upon it as a "fictitious defendant." (See footnote [3], *ante.*) Plaintiff responds that the order may not be challenged on the appeal because the City did not seek appellate review, pursuant to Code of Civil Procedure section 416.3,[4] when the order was entered.

---

[3]Although—as will appear—the validity of this motion is not before us on the appeal, we note that the City contended that Code of Civil Procedure section 474, under which it had been named as defendant "Doe I," was inapplicable because, as shown by the allegations of the original complaint, plaintiff was not "ignorant of the name" of the City when the action was commenced (see, generally, *Lipman* v. *Rice* (1963) 213 Cal.App.2d 474 [28 Cal.Rptr. 800]; 1 Witkin, Cal. Procedure (1954) [Pleading, § 235, pp. 1210-1213]); that, accordingly, it had not been and did not become a party to the action; and that a motion to quash service of summons upon it was therefore proper. (*Kline* v. *Beauchamp* (1938) 29 Cal.App.2d 340, 342 [84 P.2d 194].)

[4]Section 416.3 must be read with section 416.1. In order and as pertinent, each provides as follows:

Plaintiff's position must be sustained. As indicated by authoritative sources published both before and after the enactment of section 416.3 in 1955, the Legislature intended (1) that the section would provide [a] method of obtaining appellate review of the order here in question, and (2) that the availability of the interlocutory appellate remedy would, accordingly, preclude review of the order upon appeal from a judgment entered after trial on the merits. (Report of State Bar Committee on administration of Justice (1954) 29 State Bar J. 224, 227 [-228]; Legislative Note (1955) 43 Cal.L.Rev. 695 [-] 699; Comment (1955) 29 So.Cal.L.Rev. 94, [98-101].)

Before section 416.3 was enacted, moreover, the rule was that the unsuccessful moving party waived his jurisdictional objection entirely if he made a general appearance after his motion was denied. (*Jardine* v. *Superior Court* (1931) 213 Cal. 301, 304 [2 P.2d 756, 79 A.L.R. 291]; *Remsberg* v. *Hackney Manufacturing Co.* (1917) 174 Cal. 799, 801 [164 P. 792]; see 1 Witkin, Cal. Procedure (1954) Jurisdiction, § 80, p. 349.) Section 416.3 was intended to forestall this consequence by permitting the moving party to defer a general

''416.1. Any defendant . . . upon whom service of summons has been made may serve and file, on or before the last day on which he is required to plead, or within such further time as the court may for good cause allow, a notice of motion to quash the service of summons, upon the ground of lack of jurisdiction of the court over him. . . . In the event of the service and filing of such motion, the time of the moving party to plead to the complaint . . . shall be extended, and no default may be entered against him, until the expiration of 15 days following service upon him of written notice of entry of an order of the court denying the motion. Upon good cause being shown, the court may extend the latter 15-day period for an additional period not exceeding 20 days. Neither an application to the court by [any] defendant . . . for an extension of time within which to plead, nor the granting of such extension nor entering into a stipulation of the parties for such extension, shall constitute a general appearance by said defendant. . . .

''416.3. If a motion of a defendant . . . to quash service of summons, as provided in section 416.1 . . . is denied by the court, he may, before pleading, and within 10 days of service upon him of written notice of the order of the court denying the motion, or within such additional time not exceeding 20 days as the court may allow, petition an appropriate appellate court for a writ of mandate directed to the court wherein the action . . . is pending requiring the entry of its order quashing the service of summons. If he shall thereupon serve upon the adverse party and file with the clerk of the latter court a notice that he has petitioned for such writ of mandate, his time to plead shall be extended, and no default may be entered against him, for a period of 10 days following written notice of the final judgment in the mandamus proceeding, which time for good cause may be extended by the court for an additional period of not to exceed 20 days.''

Until hereinafter indicated, all statutory references are to the Code of Civil Procedure.

appearance while pursuing the interlocutory appellate remedy (*Hartford* v. *Superior Court* (1956) 47 Cal.2d 447, 452 [304 P.2d 1]; see 1 Witkin, *supra*, § 81A [1967 Supp., pp. 162-164]) [brackets in the original Court of Appeal opinion], but the section does not relieve him of the consequence if he makes the appearance. (See *Hartford* v. *Superior Court, supra* [, 47 Cal.2d 447, 452].)

In the present case the City answered plaintiff's first amended complaint and went to trial on the merits. So doing, it appeared generally, waived its jurisdictional objection, and therefore cannot assert the objection on this appeal. (*Jardine* v. *Superior Court, supra* [, 213 Cal. 301, 304]; *Remsberg* v. *Hackney Manufacturing Co., supra* [, 174 Cal. 799, 801]; 1 Witkin, Cal. Procedure (1954) Jurisdiction, § 80, p. 349.)

 The City, arguing to the contrary, first relies upon the language of section 956. [This section provides for review on appeal of certain intermediate rulings and orders.[5] Regardless of whether the denial of a motion to quash service of summons is such a ruling or order, section 956 does not alter the rule that a general appearance constitutes a waiver of the jurisdictional objection.]

The City also relies upon two decisions which have indicated that an order denying a motion to quash service of summons—as distinguished from an order granting such motion—may be reviewed on appeal from a subsequent judgment. (*Kneeland* v. *Ethicon Suture Laboratories* (1952) 113 Cal.App.2d 335 [248 P.2d 447]; *Saroff* v. *Saroff* (1944) 66 Cal.App.2d, 330 [152 P.2d 353].) [These decisions both refer to cases in which the objecting defendant does not enter a general appearance. We agree that a defendant may reserve his jurisdictional objection on appeal if, after the denial of his motion to quash, he makes no general appearance but suffers a default judgment. The defendant in the present case, however, proceeded to defend on the merits and cannot avoid the fact of its waiver of the jurisdictional objection.]

The City's additional contentions on appeal require a review of the evidence, which follows.

The collision between plaintiff's and Phillips' automobile occurred at about 7:45 p.m., in the intersection of Pacific

---

[5]As pertinent here, the section provides as follows: "956. Upon an appeal from a judgment the court may review the verdict or decision, and any intermediate ruling, proceeding, order or decision which . . . necessarily affects the judgment, or which substantially affects the rights of a party. . . . The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken."

Coast Highway and two side streets. Plaintiff received a forehead laceration (apparently a minor injury) in the Phillips accident. Pacific Coast Highway runs north and south at the intersection, which is within the incorporated limits of the City of Los Angeles. Officer Lombardo arrived at the scene, driving a police car, shortly after 8 p.m. He testified that he was "called to the scene"; although he did not elaborate, it may be fairly inferred that he had been dispatched there by a police radio call received in his car.

The Phillips vehicle had been removed from the intersection when Officer Lombardo arrived. Plaintiff's automobile was removed shortly thereafter. Lombardo first talked to Phillips, who told him where the point of impact between the two cars had been. He then discussed the accident with plaintiff.

When Lombardo talked to plaintiff, the two were standing at a corner of the intersection. The hour was dark, but the intersection was well lighted. Plaintiff pointed to the area where the automobiles had collided in the intersection. Because Lombardo could see no physical evidence from where they were standing, he walked into the vehicle lanes of the intersection. Plaintiff followed him.

Plaintiff testified that Lombardo had said "Come show me the skids," or "Come show me the point of impact," and that plaintiff had followed him as instructed. Lombardo denied making such statement before walking into the street, but testified that, after he had reached the center of the intersection and had observed that plaintiff was following him, he asked plaintiff to show him the skidmarks. He also testified that he did not tell plaintiff to return to the corner.

Officer Hyde, a Los Angeles police officer who investigated the second accident, testified that police officers use flares "when it is necessary to protect property in an intersection" or "when it is necessary to protect people from personal injuries when you are in an intersection." Officer Lombardo had flares in his police car, but did not use them at the scene of the Phillips accident; he testified that he usually set flares out "when there are vehicles stranded in the intersection to be protected and to protect the other motorists from striking those vehicles."

Traffic in the intersection was controlled by conventional electric signals. Officer Lombardo could not and did not interrupt the sequence of the signals. The signal for Pacific Coast Highway traffic was red when he walked into the intersection,

but apparently changed to green while he and plaintiff were in it.

Officer Lombardo carried a bright flashlight, which he used to signal automobiles approaching the intersection and to look for skidmarks on the pavement within it. He and plaintiff reached a point in the approximate center of the intersection. Lombardo was aware at this point that northbound automobiles were approaching on Pacific Coast Highway from the south. One of these was driven by defendant Wells.

Lombardo and plaintiff were standing close together, both facing northerly and away from Wells, when the latter's car entered the intersection and struck plaintiff. Wells testified that he approached and entered the intersection on a green light, but saw neither plaintiff nor Lombardo and was unaware of the presence of either, until the impact. Plaintiff was severely injured in this accident.

### Discretionary Immunity

The City contends that Officer Lombardo was immune from liability, for his act or omission during the investigation of the Phillips accident, under the provisions of Government Code section 820.2;[6] and that, this being so, the City is immune, as his employer, under subdivision (b) of section 815.2.[7] The argument rests upon the premise that Lombardo had no duty to investigate the accident, but undertook to do so in the exercise of "discretion vested in him."

Whether or not a public employee is immune from liability under section 820.2 depends in many cases upon whether the act in question was "discretionary" or "ministerial," respectively. (*Muskopf* v. *Corning Hospital Dist.* [, *supra,*] 55 Cal.2d 211, 220; *Lipman* v. *Brisbane Elementary School Dist.* [, *supra,*] 55 Cal.2d 224, 229.) For this reason, contentions such as the City makes here have frequently required judicial determination of the category into which the particular act

[6]Except where otherwise indicated, all statutory references hereinafter are to the Government Code. Section 820.2 states that "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[7]Section 815.2 provides in full as follows: "815.2. (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

falls: i.e., whether it was ministerial because it amounted "only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his own," or discretionary because it required "personal deliberation, decision and judgment." (*Morgan* v. *County of Yuba* (1964) 230 Cal. App.2d 938, 942-943 [41 Cal.Rptr. 508] (quoting Prosser, Torts (3d ed. [1964]) p. 1015); see *Widdows* v. *Koch* (1968) 263 Cal.App.2d 228, 239 [69 Cal.Rptr. 464]; *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 134 [43 Cal. Rptr. 294]; see, generally, Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) §§ 5.51-5.57, pp. 157-165.)

However, classification of the act of a public employee as "discretionary" will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of "discretion vested in him" to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so. (*[Johnson* v. *State of California, supra,* 69 Cal.2d 782, 796-797;] *Sava* v. *Fuller* [, *supra,*] 249 Cal.App.2d 281, 285-291.)

Accordingly, if we were to accept the City's premise that Officer Lombardo exercised his discretion in undertaking his investigation of the Phillips accident,[8] section 820.2 did not clothe him with immunity from the consequences of his negligence in conducting it. He would have been immune if plaintiff's injury had been the *result* of his—Lombardo's—exercise of discretion. (See *[Johnson* v. *State of California, supra,* 69 Cal.2d 782, 794 & fn. 8;] *Sava* v. *Fuller, supra,*

[8]Officer Hyde, who investigated the Wells accident, testified that he—Hyde—was "assigned to traffic investigation" as a Los Angeles police officer. Officer Lombardo testified that he—Lombardo—had investigated "a few hundred" such accidents, and had received formal police training in that field. Still, there was no evidence to the effect that Lombardo was under a duty to investigate the Phillips accident upon having been dispatched to the scene. Apparently, moreover, no State law explicitly imposed such duty upon him and, if a Los Angeles ordinance or police regulation did so, such has not been called to our attention. On the other hand, the City essentially contends that a city police officer dispatched to the scene of a traffic accident within the city's limits is under no duty to investigate it when he arrives, and that he acts within his discretion if he does. This argument derives from an omission of proof in the present case, and it comports neither with reality nor with State laws which impose some accident-reporting duties upon citizens and city police departments, and which suggest others. (See, e.g., Veh. Code, §§ 625, 2407, 20001, [20002,] 20003, 20004, [] 20008, subd. (a).) Therefore, if we were to "accept" this premise as stated in the text, we would do so for purposes of argument and on the state of the record before us: we do not suggest that a city police officer is under no duty to investigate a traffic accident, nor that he is vested—or not—with discretion in the matter.

249 Cal.App.2d 281, 285.) It was not: it resulted from his negligence after the discretion, if any, had been exercised. Because the essential requirement of section 820.2—a causal connection between the exercise of discretion and the injury—did not exist, the statutory immunity does not apply.

Since Lombardo was not immune from liability under section 820.2, the City (1) is not immune under subdivision (b) of section 815.2 and (2) is liable under subdivision (a) thereof. (See section 815.2, quoted in footnote [7], *ante*.)

### Jury Instructions

At plaintiff's request, the trial court gave the jury these two instructions:

"[Plaintiff's instruction No. 4] You are instructed that a police officer has the duty to investigate a traffic accident resulting in personal injury and to gather evidence relating thereto.

". . . . . . . . . . . .

"[Plaintiff's instruction No. 7] You are instructed that it is unlawful for a person to wilfully fail or refuse to comply with any lawful order, signal or direction of any traffic officer."

■ The City contends that giving plaintiff's instruction No. 4 was error because it misstated the law and necessarily misled the jury. Whether or not it accurately stated the law, however, we are not persuaded that the instruction was prejudicial. [ ] [B]ecause the instruction depicted Lombardo's action in investigating the accident to have been in discharge of duty, it tended to favor him—and the City—by making him out to be something other than a capricious intermeddler in doing so. If the instruction was erroneous as the City contends, it was not prejudicial so as to require reversal. (Cal. Const., art. VI, § 4½; see *id.* [as amended in 1966], art. VI, § 13.) [Brackets in the original Court of Appeal opinion.]

■ As to plaintiff's instruction No. 7, the City correctly points out that it recites a portion of Vehicle Code section 2800.[9] The City asserts that the trial court therefore erred in giving it (1) because Officer Lombardo was not a "traffic officer" as that term is defined in Vehicle Code section 625,[10] and (2) because Vehicle Code section 2800 applies

---

[9]"2800. It is unlawful to wilfully fail or refuse to comply with any lawful order, signal, or direction of any traffic officer or to refuse to submit to any lawful inspection under this code."

[10]As pertinent, Vehicle Code section 625 provides that "A 'traffic officer' is any . . . peace officer [who] is on duty for the exclusive or

only to the "direction of traffic" and not to the verbal instruction (attributed to Lombardo by plaintiff) that plaintiff accompany an officer into the area of an accident under investigation.

It is undisputed that Lombardo was a "peace officer" (Pen. Code, § 817), and that he was on duty as such when he was investigating the Phillips accident. Apart from the question whether he was acting ministerially or at his discretion, he was acting: and his "main purpose" was to enforce the provisions of division 10 (§§ 20000-20016) of the Vehicle Code, which relates to the reporting of traffic accidents and, inferentially at least, to their investigation. He was, therefore, a "traffic officer" within the meaning of Vehicle Code section 625.

We do not concur in the City's narrow interpretation of Vehicle Code section 2800. Had the section been intended to require that only nonverbal instructions should be obeyed, the words "order" and "direction" would be superfluous. We [might] conclude that either of these terms included the verbal instruction which, according to plaintiff's testimony, Lombardo gave him in the present case. [We need not reach this question, however, because] the City's argument ignores the testimony that Officer Lombardo used his flashlight to signal motorists approaching the intersection. The instruction was therefore relevant to the jury's assessment of the conduct of Wells—one of these motorists—if the jurors had concluded that he saw, but did not heed, the flashlight signals. The trial court, therefore, did not err in giving the instruction.[11]

main purpose of enforcing the provisions of Division 10 or 11 of this code."

[11]The City argues, for the first time before the Supreme Court, that if we accept the conclusion that Officer Lombardo was a "traffic officer" within the meaning of Vehicle Code section 625, we are bound to hold that since, at Lombardo's request, plaintiff pointed out the skidmarks on the highway, plaintiff was a "person engaged in assisting any peace officer in active law enforcement service at the request of such peace officer." (Lab. Code, § 3366.)

Such assistance, argues the City, renders the plaintiff an employee of the City (Lab. Code, § 3366), and his exclusive remedy for the injuries suffered in the second accident falls under the workmen's compensation provisions of the Labor Code. (Lab. Code, § 3601, subd. (a).)

We do not believe that plaintiff's activity in the present case constituted "assisting any peace officer in active law enforcement service" within the scope of Labor Code section 3366. The legislative purpose of this section was to cover a person who assumes the functions and risks of a peace officer, and not one who merely informs a peace officer of facts within his own knowledge. (See, 4 Cal. Law Revision Com. Rep. (1963) pp. 1505-1507.)]

### Contributory Negligence

The City urges that, according to the evidence, plaintiff was contributorily negligent as a matter of law in walking into the intersection with Officer Lombardo. The point is without merit. (See *Anthony* v. *Hobbie* (1945) 25 Cal.2d 814, 818 [-819] [155 P.2d 826]; *Markewych* v. *Altshules* (1967) [255 Cal.App.2d 642, 645-647 (63 Cal.Rptr. 335)].)

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

