[Civ. No. 32619.    Second Dist., Div. Two.    Feb. 26, 1969.]

BANK OF AMERICA et al., as Coexecutors, etc., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Ball, Hunt, Hart & Brown, Joseph A. Ball and Elmer G. Hitt for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Donald K. Byrne, Assistant County Counsel, and Jerome A. Johnson, Deputy County Counsel, for Defendants and Respondents.

ROTH, P. J.—Co-executors of an estate holding title to 72 acres known as Compton Airport (airport) appeal from a judgment denying their claim against the County of Los Angeles and Deputy Counsel Johnson (Johnson), respondents, predicated upon tortious interference with the probate sale of airport and upon the theory of inverse condemnation.

It is charged that tortious interference by Johnson during the course of a probate sale held on July 19, 1963, stifled or chilled higher bids, by announcing in court: "My name is

Jerome A. Johnson, Deputy County Counsel. I would like to bring to the attention of the Court that yesterday the Board of Supervisors of this County adopted a resolution to condemn the property for airport purposes.''

The Board of Supervisors of the County (Board) had adopted two resolutions on the previous day, July 18, 1963. The first directed the county counsel to appear and to advise the probate court of County's desire to ''immediately open negotiations'' to acquire airport.[1]

''Later, at the same meeting, the Board of Supervisors, by a four-fifths (4/5) vote . . . [determined by] resolution . . . that public interest and necessity required . . . acquisition of . . . title to the real property described therein for 'airport purposes, and for such other public uses as may be authorized by law,'. . . . The said resolution further provided 'that the County Counsel . . . is hereby authorized and directed to institute eminent domain proceedings . . . for the purpose of acquiring . . . title in and to the said . . . property for said public use.'' (Finding IX).

The proceedings were subsequently abandoned, but the parties concede the abandonment does not affect the issues raised.

Appellants contracted on June 20, 1963, subject to confirmation by the probate court, for the sale of the airport to Valiant Investment Company for $2,030,000. On July 18, 1963, the day before the hearing for confirmation, the Board met in a regular session and, as an emergency matter, adopted the resolutions referred to. The Chief Assistant County Counsel (Chief Assistant) who drafted the resolutions, thereafter conferred with Johnson to consider procedure. Other findings in pertinent part were:

''X

''. . . Johnson was directed by . . . Chief Assistant . . . to contact the attorneys representing the Estate of Woodley to advise them of the action of the Board . . . and to request

---

[1]''. . . 'The matter of acquisition of the Compton Airport is discussed by this Board, and on Motion of Supervisor Bonelli unanimously carried (Supervisor Dorn being temporarily absent), it is ordered that this Board take an interest in the acquisition of said airport and that the Director, Department of Real Estate Management, and the County Engineer be and they are hereby instructed to immediately open negotiations for the acquisition of said airport, and that the County Counsel be and he is hereby instructed to contact the probate judge in an attempt to have proceedings concerning said property held in abeyance during the period of negotiation.' ''

that the hearing . . . be continued. . . . Johnson advised the attorneys of the actions of the Board . . . and requested that the hearing be continued. The attorneys . . . after conferring with an officer of the Bank of America . . . advised that they were unwilling to request a continuance of the hearing.

## "XI

"The Chief Assistant . . . then directed . . . Johnson to appear at the hearing on the confirmation of the sale and to announce to the court that the Board . . . had adopted the resolution directing the condemnation of the subject property.
". . . . . . . . . . . . .

## "XIII

"At the time the petition for confirmation of sale was called for hearing, an officer of Biltmore Realty Company was present. He was ready, willing and able to submit a bid or bids to purchase the property at a price in excess of $2,030,000.00 and intended to bid up to $2,482,000.00 . . . ; . . . officers of Valiant . . . were likewise in court and they were ready, willing and able to submit increased bids . . . and intended to bid up to $3,000,000.00 . . . if necessary; and that by reason of . . . Johnson's announcement . . . neither Biltmore . . . nor Valiant . . . submitted any increased bid.

## "XIV

"That if bidding had taken place, the amount bid . . . would have increased to at least Two Million, Four Hundred Eighty-two Thousand ($2,482,000.00) Dollars. By reason of the absence of bidding, the sale of the property was confirmed for the sum of Two Million, Thirty Thousand ($2,030,000.00) Dollars and was sold to . . . Valiant. . . .

## "XV

"At the time . . . Johnson made the announcement . . . , he was acting in a good faith attempt to carry out the orders of the Board . . . and of his superior officer and was not motivated by any intent to cause injury to the plaintiffs, and he was unaware of the fact that there were bidders present in court who contemplated increasing the amount bid on the property. The determination to make the announcement in court was the result of the exercise of discretion on the part of . . . Johnson and his superior officer. Upon such deter-

mination being made and pursuant thereto, . . . Johnson was directed by his superior officer to make such announcement. Pursuant to such directive, . . . Johnson was required to and did make such announcement. *The mere making of such announcement by . . . Johnson did not involve the exercise of any discretion on his part.* [Italics added.]

## "XVI

". . . Johnson, as an attorney with experience in both fields of probate law and condemnation law, was aware that the announcement . . . could have the effect of discouraging bidding on the subject property.

## "XVII

"On October 17, 1963, . . . plaintiffs . . . filed a claim for $850,000.00 . . . said claim was rejected . . . by . . . the Board . . . on January 28, 1964."

The trial judge concluded:

## "I

"The determination by the Board . . . that the public interest and necessity require the acquisition of . . . Airport . . . and directing . . . County Counsel to institute condemnation proceedings and directing . . . County Counsel to contact the probate judge in an attempt to have proceedings concerning said property held in abeyance constituted a political, legislative, and governmental decision, which involved the exercise of discretion vested by law in said Board.

## "II

"The decision of the County Counsel determining that the court should be advised of the action of the Board . . . required the exercise of a discretion vested in the County Counsel.

## "III

"The acts of the Board . . . and of . . . Johnson did not constitute a taking or damaging of private property for public use.

## "IV

"The acts of the Board . . . and of . . . Johnson did not constitute a tortious interference with a prospective economic relationship."

Appellants do not challenge the absolute right of the state or any of its subdivisions to exercise the power of eminent

domain to acquire an airport (Code Civ. Proc., § 1238, subd. 20), or the right of the Board to adopt the resolution directing the County Counsel to institute a condemnation action for that purpose (Gov. Code, § 25203), or the County's right to abandon the action (Code Civ. Proc., § 1255a).

Appellants review and analyze the pertinent sections of the 1963 Tort Claim Act (§ 810 et seq); 815, subd. (a); 815.2; 820; 820.2; 825; (Gov. Code), and concede: "The effect of the foregoing statutes is that, except as otherwise provided by statute, a public entity is not liable for damages caused by such entity or its employee (Govt. Code 815); but a public entity is liable for injury caused by its employee, within the scope of his employment, if the employee's act would give rise to a cause of action against the employee (Govt. Code, 815.2) and must indemnify the employee against such liability (Govt. Code, § 825). Furthermore, a public employee is liable for injury caused by his acts to the same extent as a private person (Govt. Code § 820) except that he is not liable for injury resulting from his act, where the act was the result of the exercise of discretion vested in him (Govt. Code § 820.2)."

Appellants at the trial and in their briefs concede that Board and Chief Assistant severally exercised governmental discretion which immunized each from legal action.

The thrust of appellants' position in the briefs is that the announcement in open court by Johnson was a ministerial act which equated with tortious interference and not an exercise of discretion protected by the immunity provisions of section 820.2. In oral argument, however, appellants assert that *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], decided *after the trial,* indicates that Chief Assistant, too, would have been liable if they had anticipated *Johnson (supra)* and made him a party.

Section 820.2, the critical section on this appeal, reads as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused."

Appellants argue "Immunity is, therefore, dependent upon a determination that . . . [Johnson's and Chief Assistant's] act was the result of the exercise of discretion vested in [them]. If it was, [they are] not liable for the injury and neither is [their] employer. However, if the question is

answered negatively, Johnson [and Chief Assistant are] liable for . . . tort. (Govt. Code, § 820.), and if the injury was caused by conduct falling within the scope of [their] employment, Los Angeles County is likewise liable. . . . (Govt. Code, § 815.2).''

The prime question is whether the ministerial act of Chief Assistant and Johnson is immunized from liability by the governmental discretion concededly exercised by the Board. Ancillary to that is the question whether County Counsel had and exercised a proper discretion.

■ Appellants concede that the trial court correctly concluded: ''. . . that public interest and necessity required the acquisition of the . . . airport . . . and condemnation proceedings and directing the County Counsel to contact the probate judge . . . constituted a political, legislative and governmental decision, which involved the exercise of discretion vested by law in said Board.''

The record leaves no doubt that the decision to notify the probate court was that of the Board. It was not made by County Counsel, his Chief Assistant, or any of his deputies.

The announcement in probate court found by the trial court to be a ministerial act, was incidental and collateral to the governmental decision made by the Board and is protected to the same extent as the decision of the Board, irrespective of whether it were made in the probate court by the full Board appearing in person, by Johnson, Chief Assistant, or by the County Counsel himself.

The undoubted discretion of the Board was weighted with the knowledge it had about the proposed probate sale. ■ The law imposes a responsibility on the Board to make its actions public. The following provisions of the Government Code are significant:

''All meetings of the board of supervisors shall be public.'' (§ 25080).

''The board shall cause to be kept: (a) Its minute book. (b) An ordinance book. . . .'' (§ 25102).

''In lieu of entering resolutions in full in the minute book, the clerk, with the approval of the board, may keep a resolution book in which he shall enter all resolutions in full. . . .'' (§ 25102.1)

''The books, records, and accounts of the board shall be kept at the office of the clerk and open at all times for public inspection.'' (§ 25104).

"Before the expiration of 15 days after the passage of an ordinance it shall be published once, with the names of the members voting for and against the ordinance, in a newspaper published in the county if there is one, and if there is no newspaper published in the county, the ordinance shall be posted at the courthouse door within the 15-day period and remain posted thereafter for at least one week. . . ." (§ 25124.)

"Within 10 days after each session of the board of supervisors, it shall cause to be published a fair statement of all its proceedings. Violation of this section is punishable by a fine of not less than five hundred dollars ($500) nor more than one thousand dollars ($1000), or by forfeiture of office, or by both." (§ 25150).

"All public notices of proceedings of or to be had before the board, not otherwise specially provided for, shall be posted at the courthouse door and at two other public places in the county." (§ 25151.)

These statutes make it clear that the public is entitled to notice of what the Board does. ■ The Board undoubtedly felt it had a responsibility to notify the probate court to help effect the purpose of its resolutions. The manner of notice to the probate court was a matter of discretion to be decided and it was decided by the County Counsel.

■ Finding XV which states in pertinent part: ". . . The determination to make the announcement in court was the result of the exercise of discretion on the part of . . . Johnson and his superior officer," is attacked on the ground that it is not supported by the evidence. The record shows that the decision as to method of advising the probate court was the result of full discussion between Chief Assistant and Johnson. The criticized excerpt is amply sustained by the evidence.

If the argument of appellants is sound, then if Chief Assistant had executed the decision, he would have been consummating a discretionary act, but in order to do so, the mere announcement by him would have been as much a ministerial act as was the announcement by Johnson. ■ The County Counsel represents the Board. Any discretionary decision made by that office (within the scope of its authority), is its decision, whether it be by Chief Assistant, any deputy, or Chief Assistant in concert with any deputy, and remains its decision, irrespective of who among them (within the scope of his official duties) performs the ministerial act which effectuates

such decision. If the County Counsel had decided to appear in court, accepting the decision of the Chief Assistant, even though he did not participate in the discussion, could it be argued that his office did not perform a discretionary act in respect of the manner in which the probate court should be notified?

We are convinced that the County Counsel, Johnson and Chief Assistant made, and through Johnson carried out, a discretionary decision.

*Johnson, supra,* does not, nor does *McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], suggest anything to the contrary. No case cited to us suggests anything to the contrary. *Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], cited by appellants, is not in point on the facts, but does enunciate the rule applicable here.

■ In *Lipman,* at page 233, the court said: "The rule is settled . . . that governmental officials are not personally liable for discretionary acts within the scope of their authority, and this rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which, *although only incidental and collateral,* serve to promote those purposes. (*White* v. *Towers,* 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636].)" (Italics added.) In *Lipman,* at the pleading stage, the court considered a complaint against a school district, three trustees, the county superintendent of schools and the district attorney wherein it was alleged that the trustees sought by defamatory statements to discredit the reputation of plaintiff, the superintendent of the defendant school district, and further alleged that the county superintendent and the district attorney made defamatory statements for the purpose of causing her dismissal. The court reversed the judgment as to the individuals and dismissed the demurrer. In language clearly distinguishing the facts there alleged from the facts at bench, the court said at page 234: "*The statements* [of the trustees] allegedly made to the press and to members of the public *were not confined to reports* of charges that were being made; they purported to be statements of facts *and were beyond the scope of the trustees' powers.* In making these statements the three trustees were not within the immunity rule. . . ." And at page 325: "They [the county superintendent and district attorney] cannot claim immunity insofar

as they made or caused to be made *defamatory statements* concerning plaintiff to members of the public *which were not merely reports of official action* but instead purported to be statements of fact within their personal knowledge.'' (Italics added.) At bench, Johnson's announcement was by order of the Board and it was within the scope of his official duties. The announcement was made in good faith. It was not defamatory. It was a factual and accurate report of the Board's official action.

In *Johnson, supra,* the court, also at the pleading stage, followed the rule, rationale and policy stated in *Lipman.* The court rejected ''the state's invitation to enmesh ourselves deeply in the semantic thicket of attempting to determine as a purely literal matter 'where the ministerial and imperative duties end and the discretionary powers begin. . . .' [Citations]'' (69 Cal.2d at p. 788.) Instead, at page 789, it ''posited immunity on the [same] . . . considerations'' enunciated in *Lipman.* Those considerations are present in the record before us.

■ Further, in our opinion, the undisputed facts show no interference, tortious or otherwise, with a contract or negotiations. The contract made with Valiant was subject to confirmation. If the sale had been continued, the estate may have had the County as an added bidder and received a bid in excess of that for which the 72 acres were sold or in excess of the bids either bidder in court was prepared to make. The Board's resolution to notify the probate court was undoubtedly to give it the opportunity to formulate a bid. It presumably knew of the contract with Valiant and it also was charged with knowledge that it would be required to bid at least $100,000 more. (Prob. Code, § 785.) The County as a public entity is in no better position than is any other bidder. Each is expected to pay the reasonable market value of the property, to wit: the highest and best use for which the property can be used, irrespective of what use a prospective bidder may make of it.

We have no right to assume that if the sale had been continued, the County would not have made a bid equal to that which may have been bid by either of the potential bidders.

The Board undoubtedly had the hope it could consummate its purpose without any formal action other than the resolution it had already passed.

We are convinced that the announcement made by Johnson

in furtherance of the governmental action taken by the Board did not constitute tortious interference with any rights of appellants, and in any event, that the announcement falls within the immunity laws.

Condemning agencies do not forthwith proceed by filing actions and recording lis pendens. The County Counsel could have done both on the day the resolutions were passed. He was instructed by the Board to notify the probate court because presumably the court as well as the attorneys for the executors is interested in getting the highest good bid.

▇ In advancing the theory of inverse condemnation, appellants concede that the decision by the Board to condemn did not constitute an actionable taking. Their argument on this point is that *their right to sell the property* was taken by the interjection of Johnson's announcement at the probate sale.

On the logic of the admitted facts, it is clear that the right to sell was taken or interfered with by the Board's resolution and not the deputy's announcement.

If the proposition asserted is sound, then whenever a governmental entity passes a resolution to condemn or proceeds to file an action, and a lis pendens—or tries or partially tries a condemnation action and subsequently abandons it at any stage of said proceedings—the governmental entity in question is liable in damages on the theory of inverse condemnation, if a potential bidder testifies he withheld a firm bid he was about to make just before he was informed of the proceedings outlined.

Moreover, if such reasoning is sound, then, in the event the condemnee can prove that at any stage of the eminent domain proceeding prior to such abandonment he had a bona fide offer to sell the condemned property at a price in excess of any offer received from condemnor, such condemnee would have a cause of action since the interference with his right to sell deprived him of the opportunity to consummate a profitable sale.

Authorities are cited to demonstrate that it is unnecessary to show physical damage or an invasion of the property to create a solid claim for inverse condemnation. (Nichols on Eminent Domain, section 6.3; *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A. N.S. 652] ; *Granone* v. *County of Los Angeles,* 231 Cal.App.2d 629 [42 Cal.Rptr. 34] ; *Frustuck* v. *City of Fair-*

*fax,* 212 Cal.App.2d 345 [28 Cal.Rptr. 357] ; *San Mateo Water Works* v. *Sharpstein,* 50 Cal. 284; *People* v. *Associated Oil,* 211 Cal. 93 [294 P. 717] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818] ; and *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799].) A line of federal cases headed by the Holmes opinion in *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393 [67 L.Ed. 322, 43 S.Ct. 158, 28 A.L.R. 1321] is cited for the proposition that if a state ''regulation goes too far it will be recognized as a 'taking'.'' (*Pennsylvania Coal Co.* v. *Mahon,* page 415 [67 L.Ed. at page 326].)

The foregoing authorities, however, do not reach the issue here.

There can be no doubt that eminent domain activity from the time a resolution to condemn is passed until it is completed or abandoned interferes with the right of the condemnee to sell. The Board's resolution per se makes the condemnee an involuntary vendor, and by that very act which is proper governmental interference, exercises vendor's right to sell fully as much as if it were a voluntary sale.

The right to sell is interfered with voluntarily when a private contract to sell is made fully as much as when the Government's right to condemn is exercised. Vendor's right to sell is fully expended during the period fixed for consummation of any contract. During such fixed period vendee may default and vendor may have received better offers which disappear when he has regained his right to sell. Vendor's recovery, if he sues, will nevertheless be limited to the difference between the contract price and the market value of the property at the time the contract was made, even though the offers he received may have been in excess of the market value. (Civ. Code, § 3307; *Freedman* v. *Rector etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1] ; *Royer* v. *Carter,* 37 Cal.2d 544 [233 P.2d 539].)

■ When a condemnation proceeding is abandoned, the rights of the condemnee are fixed by statute. (Code Civ. Proc., § 1255a). Financial impairment of the right to sell is not included as an element of damage.

■ We have been cited to no case and find none which holds that the principle of inverse condemnation applies to interference with the right to sell.

The logic of the situation constrains us to hold that the

principle of inverse condemnation has no application to the facts at bench.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 30, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.