**Pablo Reyes FLORES**

v.

**NORTON & RAMSEY LINES, INC.**

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY.**

No. SA–71–CA–224.

United States District Court,
W. D. Texas,
San Antonio Division.

Dec. 14, 1972.

Warren Burnett, Warren Burnett Associates, and Allen Moore, Odessa, Tex., for plaintiff, Pablo Reyes Flores.

Jack Hebdon, San Antonio, Tex., for defendant-cross plaintiff, Norton & Ramsey Lines, Inc.

Atty. Gen. Crawford C. Martin and Asst. Atty. Gen. Robert W. Gauss, Austin, Tex., for cross-defendant, Texas Dept. of Public Safety.

### ORDER DENYING MOTION TO DISMISS THIRD·PARTY COMPLAINT

SUTTLE, District Judge.

On the 17th day of November, 1972, and on the 14th day of December, 1972, came on for consideration and hearing the Motion to Dismiss filed herein on October 12, 1971 by the Third Party Defendant, Texas Department of Public Safety. The Court, having considered the Motion, the comments of counsel, and the files and records of the case, finds and rules as follows:

This negligence suit arose as a result of a collision between two trucks, one owned and operated by plaintiff, Pablo Reyes Flores, and the other owned by defendant Norton & Ramsey Lines, Inc. (Norton & Ramsey) and operated by its employee Don Anderson. Plaintiff contends that, about 3:00 a. m. on May 21, 1970, he was proceeding north in his tractor-trailer truck on Interstate 35 near New Braunfels, Texas when he was directed to stop by Daniel Koenig, a Texas Department of Public Safety license and weight officer, for the purpose of weighing plaintiff's vehicle. As plaintiff climbed down from his truck, defendant's truck, also traveling in a northerly direction, crashed into the rear of plaintiff's truck killing defendant's employee Don Anderson and, plaintiff contends, causing personal injury and property damage to plaintiff. Plaintiff sued Norton & Ramsey for damages in this Court on August 31, 1971. On September 29, 1971, Norton & Ramsey filed a third-party complaint against the Texas Department of Public

Safety under Section 3 of the Texas Tort Claims Act[1] for indemnity or contribution in the event that Norton & Ramsey is found negligent in the main cause. Norton & Ramsey contends that Patrolman Koenig, while in the course and scope of his employment, negligently waved the plaintiff's truck to a stop from the opposite side of the road in the middle of the night and failed to make proper provision for removing the truck from the highway, and that such negligence was a proximate cause of the accident in question. The Texas Department of Public Safety, represented by the Attorney General of the State of Texas, filed its Motion to Dismiss the third-party complaint on October 12, 1971.

## I.

## SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT

■ The Court is faced initially with a preliminary jurisdictional argument that it lacks jurisdiction over the Texas Department of Public Safety because the State of Texas has not waived its sovereign immunity under the Eleventh Amendment to the United States Constitution. It is settled law that a state is constitutionally immune from actions brought in federal courts by its own citizens or citizens of other states.[2] The general test recognized by the courts for the existence of Eleventh Amendment immunity is two-fold: "(1) whether the action is against the state, and (2) if the action is against the state, whether the state consented to be sued in the federal courts."[3]

■■ The law is clear in Texas that a suit against the Texas Department of Public Safety is a suit against the State of Texas.[4] The question remains whether the State of Texas has waived sovereign immunity and consented to be sued in federal court. Such consent is normally a matter of state law.[5]

■■ Prior to the enactment of the Texas Tort Claims Act, the Courts of Texas rigidly applied the sovereign immunity doctrine in suits against the state.[6] In Section 4 of the Texas Tort Claims Act, however, the Texas Legislature specifically waived and abolished sovereign immunity and granted permission *"to all claimants"* to bring suit against the State of Texas or other unit of government covered by the Act.[7] Of course, a state legislature may waive the state's immunity to suit under the Elev-

1. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 3 (1970).

2. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted .against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S.Const., Amend. XI; *see* Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889); Scott v. Board of Supervisors of La. State U., 336 F.2d 557, 558 (5th Cir. 1964).

3. Aerojet-General Corp. v. Askew, 453 F.2d 819, 828 (5th Cir. 1971); *see* Ford Motor Co. v. Indiana Dept. of Treas., 323 U.S. 459, 462, 65 S.Ct. 347, 89 L.Ed: 389 (1945).

4. Department .of Pub. Safety v. Great S. W. Warehouses, Inc., 352 S.W.2d 493, 494 (Tex.Civ.App.—Austin 1961, writ ref'd, n. r. e.). *See also* Griffin v. Hawn, 161 Tex. 422, 341 S.W.2d 151, 152 (1960).

5. Ford Motor Co. v. Indiana Dep't of Treas., *supra*, 323 U.S. at 463, 65 S.Ct. 347.

6. *See* Majure, Minick & Snodgrass, Governmental Immunity Doctrine in Texas, 23 Sw.L.J. 341 (1969); Comment, Governmental Immunity from Suit and Liability in Texas, 27 Tex.L.Rev. 337 (1949).

7. To the extent of such liability created by Section 3, immunity of the sovereign to suit, as heretofore recognized and practiced in the State of Texas with reference to units of government, is hereby expressly waived and abolished, and permission is hereby granted by the Legislature to all claimants to bring suit against the State of Texas, or any and all other units of government covered by this Act, for all claims arising hereunder.
Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 4 (1970).

enth Amendment.[8] But, it is also true that, while a state may elect to waive sovereign immunity in its own courts, at the same time it may retain immunity against suit in federal courts.[9] The issue presented is whether Texas elected to retain immunity from suit in federal court when it enacted the Texas Tort Claims Act. At least one federal court believes that it did.

In *Weaver v. Hirsty*,[10] a suit by plaintiff against defendant arising out of an automobile accident, defendant impleaded the Texas Highway Commission under the Texas Tort Claims Act for indemnity or contribution on grounds that the Commission through its employees negligently surfaced the highway where the accident occurred. The Court dismissed the suit against the state on grounds that the Texas Tort Claims Act did not waive the state's sovereign immunity to suits in federal court under the Eleventh Amendment. The Court concluded that the venue provision in Section 5 that "[a]ll cases arising under the provisions of this Act *shall* be instituted in the county in which the cause of action . . . arises," and the wording of the Act in Section 7 that "[t]he . . . Rules of Civil Procedure . . . shall apply to and govern all actions brought under . . . this Act" limited suits to state courts only.[11]

█ Being unable to distinguish the case on its facts, this Court respectfully admits that it disagrees with the reasoning in the *Weaver* case and declines to follow it. First, the language of the Texas Legislature in Section 4 of the Tort Claims Act expressly grants permission *to all claimants* to sue the State of Texas. That language certainly extends to an interpleader action in federal court. Had the Legislature intended otherwise, it could have easily stated so in Section 4 or in Section 14, where numerous exceptions to liability are set out. Second, Section 5 of the Act commanding that suit be instituted in the county in which the cause of action arose merely relates to venue. It is inconceivable that the Texas Legislature intended to limit suits in federal court under the Act by that language.[11a] Finally, the application of the Texas Rules of Civil Procedure to the Act in Section 7 does so *"insofar as applicable."* In federal court Texas Rules of Civil Procedure are clearly not applicable and the language used could be construed as recognition of that fact by the Texas Legislature.

A construction of the Act allowing suit in federal court is reasonable, especially when the state is impleaded for purposes of contribution or indemnity, in order to settle all litigation in one action. Thus, piecemeal litigation in both state and federal courts is avoided. At the same time, the plaintiffs' choice of forum is protected in diversity cases.

█ This Court is aware that "waiver" is not to be lightly inferred.[12] Also, there are cases which hold that the mere fact that a state has waived sovereign immunity does not automatically

---

8. Missouri v. Friske, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933).

9. Smith v. Reeves, 178 U.S. 436, 445, 20 S. Ct. 919, 44 L.Ed. 1140 (1900); Southern Bridge Co. v. Louisiana Dep't of Highways, 319 F.Supp. 948, 950 (E.D.La. 1970).

10. No. 5513 (E.D.Tex., Nov. 22, 1972) (Unreported).

11. Tex.Rev.Civ.Stat.Ann. art. 6252-19, §§ 5, 7 (1970).

11a. State statutes prescribing venue to courts sitting in the county where the cause of action arose have not generally

been held to preclude suit in federal courts. *See* The Texas Workmens' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8307, § 5 (1967); Ellis v. Associated Industries Ins. Corp., 24 F.2d 809 (5th Cir.) cert. denied, 278 U.S. 649, 49 S.Ct. 92, 73 L.Ed. 561 (1928).

12. Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *see* Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Scott v. Board of Supervisors of La. State U., *supra*, 336 F.2d at 558.

authorize suits against that state in federal court.[13] But recent cases indicate that the Supreme Court has been trying to escape the rigid, formalistic doctrine it built up under the Eleventh Amendment.[14] As Mr. Justice Frankfurter recognized, "[sovereign immunity] undoubtedly runs counter to modern democratic notions of the moral responsibility of the State."[15] Accordingly, this Court holds that the Texas Legislature expressly waived sovereign immunity in suits against the State of Texas under the Texas Tort Claims Act in federal as well as state courts, and that this Court has jurisdiction of this cause.

## II.

### CAUSE OF ACTION UNDER THE TORT CLAIMS ACT

The next issue presented is whether the acts of Patrolman Koenig, if proved, create liability to the State of Texas under Section 3 of the Texas Tort Claims Act. This is a case of first impression in Texas. While this Court is Erie-bound to follow Texas law, there are few cases construing the 1969 Texas Tort Claims Act, and those which have are not in point. Norton & Ramsey exclusively relies on Section 3 of the Act to state a cause of action:

Each unit of government in the state shall be liable for money damages for personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment . . . under circumstances where such officer or employee would be personally liable to claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state . . . . [16]

Section 3 is logically divided into two parts. The first creates liability for negligent or wrongful acts of state employees arising from the operation or use of motor-driven vehicles. That portion is not applicable here. The second creates liability for death or personal injuries so caused from some condition or some use of tangible property. Although subject to dispute, this Court interprets the phrase "so caused" in the second portion of Section 3 to be referable to the term "negligence or wrongful act" and not to the limited liability applicable to the first portion of the section involving motor vehicles.[17]

---

13. *See* Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946) [state statute providing for action in "any court of competent jurisdiction" held no consent to federal suit] ; Ford Motor Co. v. Indiana Dep't of Treas., 323 U.S. 459, 65 S. Ct. 347, 89 L.Ed. 389 (1945) [state statute authorizing suit in "the circuit or superior court of the county in which the taxpayer resides or is located" held no consent to federal suit] ; Great Northern Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) [state statute authorizing recovery of taxes in "the court having jurisdiction thereof" held no consent to federal suit]. *But see* Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014 (1894) [state statute allowed review of Texas Railroad Comm'n Order "in a court of competent jurisdiction in Travis County, Texas" held consented to suit filed in federal district court sitting in Travis County, Texas].

14. *See* Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) ; Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1955). *See generally,* Cullison, Interpretation of the Eleventh Amendment, 5 Hous.L.Rev. 1 (1967).

15. Great Northern Ins. Co. v. Read, *supra,* 322 U.S. at 59, 64 S.Ct. at 879 (Frankfurter, J., dissenting).

16. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 3 (1970).

17. See A Report to the Senate of the 62nd Legislature, State of Texas, by the Senate Interim Comm. to Study the Texas

■ The state contends that the words "some condition or some use" in Section 3 modifies tangible property, and that it is the condition of or the use of the property which would subject the state to liability. The state also contends that this language refers to premises defects only. Thus, it concludes, were plaintiff suing the state directly, the state would owe to plaintiff only the duty owed by a private person to a licensee on private property by virtue of the exclusion found in Section 18(b) of the Act:

(b) As to premise defects, the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property, unless payment has been made by the claimant for the use of the premises. Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads or streets . . . .[18]

The duty toward a licensee in Texas is not to injure him wilfully, wantonly or through gross negligence.[19] Therefore, plaintiff, under the facts of this case, would have no cause of action against the state. Likewise, the state argues, Norton & Ramsey can recover neither contribution nor indemnity from the state in absence of a cause of action by plaintiff Flores against the state because Texas courts have held that neither contribution nor indemnity can be recovered from the party against whom the injured party has no cause of action.[20]

■ Under close scrutiny, the state's logical pyramid crumbles. Assuming, but not deciding, that the state is correct in limiting the Act to premises defects so to analogize its duty to that which a landowner owes to a licensee, the second sentence of Section 18(b) states: "the limitation of duty contained in this subsection shall not apply to . . . obstructions on highways, roads or streets . . . ." Thus, the Texas Legislature did not intend for the limited licensee rationale to apply to use of state highways where the safety of the traveling public is concerned.[21] But one does not have to go that far. Section 3 has not been thought to be limited to liability arising out of the use of motor driven vehicles and premises defects only. "The result [of the passage of the Act] is essentially waiver [of sovereign immunity] in three general areas: use of publicly owned automobiles, premises defects, *and* injuries arising out of conditions or use of property."[22]

■ At least two legal scholars have expressed the view that the Texas Tort Claims Act would authorize suits against the state from the use of personal property by a state employee, even though that property was not defective.[23] The public roadways are "subject to the use" of highway patrolmen, and it is their duty to regulate and control that use. It is reasonable to conclude that the tangible real property of the state was being "used" by a proper custodian, and it is irrelevant whether the patrolman was independently liable or not. Dean Page Keeton believes that condi-

Tort Claims Act, at 2 (May, 1971) [hereinafter cited as Senate Report].

18. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 18(b) (1970).

19. Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1964).

20. Houston v. Watson, 376 S.W.2d 23, 33 (Tex.Civ.App.—Houston 1964, writ ref'd, n. r. e.). The State of Texas cannot be held indirectly liable through contribution for damages for which it cannot be held directly liable. Satterfield v. Satterfield, 448 S.W.2d 456, 461 (Tex.Sup. 1969).

21. *See* Senate Report at 1; *see also* Irwin, Safety Responsibility to the Traveling Public, 35 Tex.Bar J. 525, 529–30 (1972).

22. Greenhill & Murto, Governmental Immunity, 49 Tex.L.Rev. 462, 468 (1971).

23. *See* Senate Report at 2 (presenting the views of Professor David V. Baum, University of Illinois) and Keeton, Summary Statement—Texas Tort Claims Act, attached as exhibit "C" to Senate Report, at A–15.

tioning the state's liability upon whether a private person would be liable, rather than whether the employee would be liable, greatly expanded the scope of the Act.[24] Even where governmental liability is contingent upon its employee's personal liability, at least one state court has allowed recovery under a state tort claims act in a similar situation.[25]

 Section 13 of the Texas Act states: "this Act shall be liberally construed to achieve the purposes hereof." [26] Thus, any ambiguity in the Act ought to be construed in favor of the claimant. Accordingly, the Motion to Dismiss filed by the Texas Department of Public Safety is hereby, in all things, denied, and this case is set for trial on the jury calendar December 18, 1972 at 9:00 a. m., and it is so ordered.

---

24. *See* Keeton, *supra*, at A–21.

25. *See* McCorkle v. *City of Los Angeles*, 70 Cal.2d 252, 74 Cal.Rptr. 389, 449 P.2d 453 (1969). In *McCorkle*, the California Supreme Court held the City of Los Angeles liable under the California Tort Claims Act, Cal.Gov.Code § 820.2, as a result of the negligence of one of its patrolmen who, while investigating an accident, asked plaintiff to step into the highway to identify skid marks. In doing so, plaintiff was hit by a passing car and severely injured.

26. Tex.Rev.Civ.Stat.Ann., art. 6252–19, § 13 (1970).