[L. A. No. 24144.   In Bank.   Dec. 5, 1956.]

GEORGE HUNTINGTON HARTFORD II, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; EDWARD BARTON COLT, a Minor, etc., Real Party in Interest.

Loeb & Loeb and Herman F. Selvin for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, David Mix and Thomas H. Carver, Deputy County Counsel, for Respondent.

Bernard B. Cohen and Henry S. Cohen for Real Party in Interest.

TRAYNOR, J.—On November 30, 1955, plaintiff, by his guardian *ad litem,* commenced an action pursuant to Civil Code, section 231,[1] to secure a declaration that defendant is his father. In his verified complaint he alleged that he is 17 years old and that since he was 10 days old he has been in the exclusive care and custody of his grandmother with whom he resides. For more than eight years plaintiff and his grandmother have been domiciled in Los Angeles County, California, "and during all of said time have been and now are residents of and physically present in said

---

[1] "An action may be brought for the purpose of having declared the existence or nonexistence between the parties of the relation of parent and child, by birth or adoption."

County and State." Plaintiff was born in New York in 1938, the child of his mother and defendant, who were never married. His mother died in 1941. To conceal the fact that plaintiff was his natural child, defendant directed that the names of plaintiff's grandmother and stepgrandfather be entered as his parents on his birth certificate, and this was done. Defendant has always "exhibited sincere interest in and concern for the welfare of plaintiff," and has visited him in California when he has been in the state in connection with businesses he maintains here. He established a trust fund of which plaintiff is beneficiary and from which his guardian receives an income of over $800 per month for plaintiff's care and maintenance, and ultimately plaintiff will receive the corpus of the trust, which is now worth more than $375,000. Accordingly, "it is not necessary for defendant to pay or contribute any money or anything else toward plaintiff's support." Shortly before the commencement of this action, defendant "for the first time denied, and he now denies that he is the natural father of plaintiff and denies that the relationship of parent and child exists between them." Defendant came to California on July 10, 1955, on a business trip but left on August 31, 1955, on learning that plaintiff intended to file this action. Plaintiff finally alleges that although he "is identified on his birth certificate as 'Edward Barton Colt,' for many years last past plaintiff has refrained from using the surname 'Colt' and has used only the name 'Edward Barton.' Plaintiff has obtained a Federal Social Security number under the name of 'Edward Barton,' and is registered in school and for many years has been and now is known among his friends and acquaintances as 'Edward Barton.' In the near future, plaintiff expects to become a member of the United States Armed Forces, and also intends to apply for a passport so that he may travel abroad. Considerable confusion has resulted and will result from plaintiff's use of the name 'Edward Barton' when he is identified on his birth certificate as 'Edward Barton Colt.' Moreover, because his birth certificate falsely states that John Colt is his father, and plaintiff is identified thereon as 'Edward Barton Colt,' it is impossible for plaintiff legally to establish his true identity or that of his true father. It is therefore necessary that it be judicially determined that defendant George Huntington Hartford, II, is the natural father of plaintiff and that the relation of parent and child exists between them, so that hereafter plaintiff will have no

difficulty legally establishing the true identity of himself and his father, especially when he enters the Armed Forces and when he applies for a passport.'' The complaint concludes with the prayer that ''the court by its decree adjudge that defendant is the natural father of plaintiff, and that the relation of parent and child exists between plaintiff and defendant. . . .''

Pursuant to Code of Civil Procedure, section 412, plaintiff secured an order for service by publication based on an affidavit stating that defendant resides outside of the state, and defendant was personally served in the State of New York. (See Code Civ. Proc., § 413.) The order for service by publication provided that it was ''applicable only to that portion of the relief prayed for in the complaint which is based on an action 'in rem.' ''

On January 6, 1956, defendant appeared specially and made a motion for an order quashing service. Affidavits were filed in support of and in opposition to the motion, which was denied on January 11th. The order of denial also provided: ''Pursuant to stipulation defendant is allowed 30 days to answer or otherwise plead to plaintiff's complaint.'' On February 9th, defendant filed this petition for a writ of mandate to compel the court to enter its order quashing the service of summons.

The procedure for attacking the jurisdiction of the court over the person of defendant by motion to quash the writ of mandate is now set forth in Code of Civil Procedure, sections 416.1[2] and 416.3[3], which were enacted in 1955.

---

[2]Any defendant or cross-defendant upon whom service of summons has been made may serve and file, on or before the last day on which he is required to plead, or within such further time as the court may for good cause allow, a notice of motion to quash the service of summons, upon the ground of lack of jurisdiction of the court over him. . . . In the event of the service and filing of such motion, the time of the moving party to plead to the complaint or cross-complaint shall be extended, and no default may be entered against him, until the expiration of 10 days following service upon him of written notice of entry of an order of the court denying the motion. Upon good cause being shown, the court may extend the latter 10-day period for an additional period not exceeding 20 days. Neither an application to the court by any defendant or cross-defendant for an extension of time within which to plead, nor the granting of such extension nor entering into a stipulation of the parties for such extension, shall constitute a general appearance by said defendant or cross-defendant.''

[3]''If a motion of a defendant or cross-defendant to quash service of summons, as provided in section 416.1 of this code, is denied by the court, he may, before pleading and within 10 days after service upon him of written notice of the order of the court denying the motion, or

Since in the present case written notice of the court's order denying the motion to quash service was served on January 12th and since defendant's petition for a writ of mandate was not filed until 18 days later and no extension pursuant to section 416.3 was obtained, plaintiff contends that the writ was filed too late. Defendant contends, however, that he sufficiently complied with the statute by filing his petition within the 30 days allowed him under section 416.1 to "answer or otherwise plead to plaintiff's complaint."

■ The obvious purpose of sections 416.1 and 416.3 is to permit a defendant to challenge the jurisdiction of the court over his person without waiving his right to defend on the merits by permitting a default to be entered against him while the jurisdictional issue is being· determined. (See 1 Witkin, California Procedure, 1955 Statutory Supplement, 17-19.) To achieve this purpose, when relief has been denied in the trial court, it is necessary that relief be sought in the appellate court before the time to plead has expired. Otherwise the defendant would be compelled to elect between permitting the entry of a default or waiving the jurisdictional issue by pleading to the merits. ■ If, however, the writ is filed in the appellate court within the additional 20-day period permitted to plead in the trial court under section 416.1, no purpose would be served by requiring the defendant to duplicate the 20-day extension secured under section 416.1 by securing a concurrent extension under section 416.3. Accordingly, when the two sections are construed together, it is apparent that they provide alternative methods of securing an additional 20-day period to petition for a writ of mandate and that a failure to secure an extension under the provisions of section 416.3 does not preclude issuance of the writ, if the petition is filed within the time permitted to plead under section 416.1.

Defendant contends that the relief sought by plaintiff is necessarily a personal judgment against him and that since he is not a California domiciliary (see *Milliken* v. *Meyer,* 311

within such additional time not exceeding 20 days as the court may allow, petition an appropriate appellate court for a writ of mandate directed to the court wherein the action or proceeding is pending requiring the entry of its order quashing the service of summons. If he shall thereupon serve upon the adverse party and file with the clerk of the latter court a notice that he has petitioned for such writ of mandate, his time to plead shall be extended, and no default may be entered against him, for a period of 10 days following written notice of the final judgment in the mandamus proceeding, which time for good cause may be extended by the court for an additional period of not to exceed 20 days."

U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]), it would deny him due process of law to sustain the service of process made outside the state. It is unnecessary to decide whether any constitutional basis other than domicile may exist in this case for asserting personal jurisdiction over defendant by process served elsewhere. (See Ehrenzweig, *Personal Jurisdiction,* 65 Yale L.J. 289; Ehrenzweig and Mills, *Personal Service,* 41 Cal.L.Rev. 383.) ■ Code of Civil Procedure, section 417, provides that "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State at the time of the commencement of the action or at the time of service." Since the term resident in this statute means domiciliary (*Smith* v. *Smith,* 45 Cal.2d 235, 240 [288 P.2d 497]), and since it is undisputed that defendant was not at any time relevant herein a domiciliary of California, section 417 precludes the entry of a personal judgment against him.

■ Plaintiff contends that since the purpose of the proceeding is only to establish the status of the parties as parent and child, it is a proceeding in rem and that therefore personal service within the state is not required. He argues that the state of his domicile has sufficient interest in his status as defendant's child to adjudicate that status without securing personal jurisdiction over defendant. We do not believe, however, that because the present proceeding is concerned solely with status it must necessarily be classified as a proceeding in rem, particularly if such a classification would result in making the judgment binding as to the status of the parties in subsequent litigation between them or others. The purpose of the particular action brought under Civil Code, section 231, must be considered to determine how it should be characterized.

■ That section provides for declarations of both the existence and nonexistence of the relation of parent and child by birth or adoption, and a distinction may reasonably be drawn between a proceeding to establish that the defendant is not the plaintiff's parent and one to establish that he is. By analogy to the rule applicable to ex parte divorces, it could reasonably be contended that the state may adjudicate

454

the nonexistence of the parent-child relationship between its domiciliary and a person not subject to its jurisdiction if adequate notice is provided. (See *Williams* v. *North Carolina*, 317 U.S. 287, 303 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Bing Gee* v. *Chan Lai Yung Gee*, 89 Cal.App.2d 877, 884 [202 P.2d 360]; *Estate of Smith*, 86 Cal.App.2d 456, 465 [195 P.2d 842]; *Estate of Hampton*, 55 Cal.App.2d 543, 559-562 [131 P.2d 565]; *In re Soderberg*, 26 Ariz. 404 [226 P. 210, 211]; *cf.*, *May* v. *Anderson*, 345 U.S. 528, 534 [73 S.Ct. 840, 97 L.Ed. 1221].) The severing of a relationship or an adjudication that it never existed for the purpose of establishing the parties' freedom from it in the future is not the same thing, however, as creating it or establishing its present existence. (See Fraser, *Jurisdiction by Necessity*, 100 Univ. of Pa.L.Rev. 305, 312.) Thus it has been recognized that a decree of divorce is a judgment in rem only to the extent it determines that the parties are thereafter free to remarry and is in personam to the extent it determines that a marriage existed at the time it was entered. (*Rediker* v. *Rediker*, 35 Cal.2d 796, 800-801 [221 P.2d 1, 20 A.L.R.2d 1152].) Basically the difference is between the state's power to insulate its domiciliary from a relationship with one not within its jurisdiction and its lack of power to reach out and fasten a relationship upon a person over whom it has no jurisdiction. (See Dodd, *Jurisdiction in Personal Actions*, 23 Ill.L.Rev. 427, 439.)

▇ Plaintiff correctly concedes that if the purpose of the present action were to enforce a duty of support or some other personal obligation growing out of the parent-child relationship, personal jurisdiction over defendant would be essential. (See *Baldwin* v. *Baldwin*, 28 Cal.2d 406, 415 [170 P.2d 670]; *In re Hindi*, 71 Ariz. 17 [222 P.2d 991, 993].)

▇ This requirement cannot be avoided by limiting the relief sought to a binding adjudication of the parties' status, since such an adjudication would prevent relitigation of the basic issue on which defendant's personal obligations to plaintiff must rest and to that extent would necessarily constitute a personal judgment against him. (See *In re Hindi, supra*; *Rediker* v. *Rediker, supra*.)[4] ▇ Moreover, the fact that it

---

[4]It is unnecessary to determine whether, given personal jurisdiction over both of the parties, a judgment establishing the parent-child relationship would be in rem so as to be binding on third parties less directly concerned with the question in issue. (See 2 Armstrong, California Family Law 918-919.)

may appear unlikely that plaintiff will ever have occasion to assert any personal rights against defendant based on the claimed relationship between them cannot justify giving any judgment that might be obtained an effect to which it would otherwise not be entitled.

Although there is language in *Urquhart* v. *Urquhart*, 185 Misc. 915 [57 N.Y.S.2d 734, 737], and in *Fordham* v. *Marrero*, 273 F. 61, 67, that supports the contention that a child's status may be determined without personal jurisdiction over his alleged parent, the holding in neither case is inconsistent with the conclusion we have reached here. Thus, in the Urquhart case the absent parent attacked the court's jurisdiction over the subject matter rather than over his person. Moreover, the action was brought against both of the parents and one of them was subject to the jurisdiction of the court. Accordingly, there was clearly jurisdiction to award part of the relief sought and it was appropriate that the absent parent be given notice of the action, whether or not he would be bound by the adjudication. In the Fordham case the determination of parentage was ancillary to the administration of an estate subject to the court's jurisdiction, and the court had power to determine the question of heirship without securing personal jurisdiction over all of the parties. (See *Estate of Wise*, 34 Cal.2d 376, 385 [210 P.2d 497].)

The question remains whether plaintiff is entitled to maintain this action despite the court's lack of power to make a binding determination that he is defendant's child without personal jurisdiction over defendant. Plaintiff is primarily concerned with establishing his true identity and reducing or eliminating the evidentiary effect of his alleged false birth certificate (see *Vanderbilt* v. *Mitchell*, 72 N.J.Eq. 910 [67 A. 97, 99, 14 L.R.A.N.S. 304]) to facilitate his dealings with military and other governmental officials. ■ It has been recognized that even when it is not res judicata, a determination of pedigree may constitute evidence of the facts adjudicated (*Morecroft* v. *Taylor*, 225 App.Div. 562 [234 N.Y.S. 2, 6]; see Health & Saf. Code, §§ 10600-10607; *In re Lee Fong Fook*, 74 F.Supp. 68, 71; *Casares-Moreno* v. *United States*, 226 F.2d 873, 874; Bayse, *Determination of Heirship*, 54 Mich.L.Rev. 737, 747-749), and such a determination may be sufficient to satisfy governmental authorities that require for one purpose or another satisfactory evidence of birth and identity. ■ Moreover, the fact that it might be used as

evidence in subsequent litigation would not constitute a denial of due process just as the use of any public record based on ex parte statements would not.[5]      Accordingly, it must be determined whether section 231 may reasonably be interpreted as authorizing an action to secure a judgment the effect of which would necessarily be limited to constituting evidence of the facts adjudicated. We have concluded that it may not. By its express terms it provides for an action "between the parties" for the declaration of "the existence or nonexistence . . . of the relation of parent and child, by birth or adoption," and normally the judgment in such an action would be res judicata. (See Code Civ. Proc., § 1908.)

     In the present case, however, the judgment could not have that effect in whole or in part in the absence of personal jurisdiction over defendant. It could not, as in the case of an ex parte divorce, conclusively adjudicate the future relationship of the parties to one another (see *Rediker* v. *Rediker, supra*, 35 Cal.2d 796, 802), and its purpose is not to adjudicate any interest in defendant's property located in this state. In the latter situation it has been recognized that a judgment obtained without personal jurisdiction is not even evidence against the defendant except as it affects his interest in the property involved (*First Nat. Bank* v. *Eastman,* 144 Cal. 487, 491-492 [77 P. 1043, 103 Am.St.Rep. 95, 1 Ann.Cas. 626]; *Brown* v. *Campbell,* 100 Cal. 635, 641 [35 P. 433, 38 Am.St.Rep. 314]), and there is no basis for assuming that in making general provisions for various types of actions the Legislature intended that final judgments obtained without personal jurisdiction should have purely evidentiary effect in some cases but not in others. There is nothing in the language of section 231 that suggests that actions thereunder should be treated differently from other actions in this respect, and it is significant that in the Health and Safety Code the Legislature has made provision for the securing of evidentiary records of vital statistics by means of ex parte judicial and administrative procedures. (Health & Saf. Code, §§ 10575-10578; 10600-10607; 10615-10618; see also Code Civ. Proc., § 2084, subdivision 2 [perpetuation of testimony with respect to questions of pedigree].) Whether plaintiff may invoke any of these procedures to secure the evidence he desires is

---

[5]Code of Civil Procedure, section 585, subdivision 3 provides that before a default judgment may be entered in a proceeding of this sort, the court must "require proof to be made of the allegations of the complaint."

a question not before us in this proceeding. The existence of such remedies, however, even though they may not provide relief in all circumstances, fortifies the conclusion that section 231 contemplates only an ordinary civil action. Since under the circumstances of this case, personal jurisdiction over defendant is essential for such an action, the service upon him outside the state was ineffective.

Let the peremptory writ issue as prayed for.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, J., concurred.