**Trisha Louise CONLON, By Next Friend Judy CONLON, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 82–1202.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1983.

790

Herbert H. Landau, Dallas, Tex., for plaintiff-appellant.

Martha Joe Stroud, Asst. U.S. Atty., Charlene M. DeBolt Seifert, Dallas, Tex., for defendant-appellee.

Before GARZA, RANDALL and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Trisha Louise Conlon appeals from summary judgment denying her claim for social security survivor's benefits. Finding that the appellant is not the insured's "child," as that term is defined in the Social Security Act, we affirm the district court.

At the time of trial, the claimant, Trisha Louise Conlon ("Trisha"), was twelve years old. Her mother, Judy Ellis Conlon ("Judy"), brought this suit as Trisha's next friend. Judy claimed that Trisha was the "child," as that term is defined in the Social Security Act, of the late Michael Conlon ("Michael"), the insured.

Michael, who had previously been a Vermont resident, served in the United States Army from 1965 through 1968, and was stationed at Fort Walters in Mineral Wells, Texas during at least the latter portion of that time. He lived with appellant's mother, Judy Ellis, a Texas resident, in nearby Irving, Texas, for approximately two weeks, from June 15, 1968 until June 28, 1968, though at the same time he also maintained a residence closer to Fort Walters. The couple was never married in any official, or other, ceremony.

Michael left Judy and Texas at the end of June 1968, and returned to his home state of Vermont, where he remained until his death in 1975. Judy remained in Texas. On April 4, 1970, Michael married Christine Pokrywka ("Christine") in Vermont. They had two children, Wendy Anne Conlon, born in September 1970, and Sarah Jean Conlon, born in May 1974.

In the meantime, Judy had given birth in Dallas, Texas, to Trisha on March 17, 1969. In January 1970, alleging that she and Michael had married, and that Trisha was an issue of that marriage, Judy, who had continued to reside in Texas with Trisha, filed suit against Michael for divorce in the Domestic Relations Court of Dallas County, Texas. Process was issued for Michael in this action by the Texas court under Rule 108, Texas Rules of Civil Procedure, and was forwarded to the High Sheriff in Rutland County, Vermont, who personally served Michael in Vermont. However, Michael made no appearance and filed no answer. In that action, the Dallas County, Texas Domestic Relations Court on March 27, 1970 granted Judy a divorce from Michael, decreeing that "the bonds of matrimony heretofore existing between JUDY ELLIS CONLON and MICHAEL JOHN CONLON be and the same are hereby dissolved, and JUDY ELLIS CONLON is hereby divorced from MICHAEL JOHN CONLON." The decree also stated that "there was one child born of this marriage, to-wit: TRISHA LOUISE CONLON," and it ordered that Trisha's name on her birth certificate, "erroneously recorded as TRISHA LOUISE ELLIS," be changed to Trisha Louise Conlon.

On October 20, 1975, Michael died in Vermont. His widow, Christine, and her two children, applied for and began receiving monthly social security survivor's benefits of $246.30 each.

On January 27, 1976, Judy, alleging that Trisha was Michael's legitimate child, applied for survivor's benefits for her. The Social Security Administration (the "Administration"), on March 17, 1976, issued a notice awarding Trisha benefits of $184.70 per month. On April 7, 1976, the Administration informed Christine that its award to Judy's child, Trisha, would reduce the benefits paid to Christine and her children from $246.30 per month to $184.70 per month.[1]

Christine protested this decision and it was overturned on October 12, 1976. Judy then requested a reconsideration. A determination on reconsideration that Trisha was entitled to receive benefits was made on

---

1. The Social Security Act, 42 U.S.C. § 403, sets a ceiling on the benefits that members of one family can receive. The maximum family benefits that Michael's survivors were eligible to receive were $738.90. Christine and her two children each received $246.30 when the figure was divided three ways. The addition of Trisha, however, as a recipient of benefits, required that the $738.90 be split four ways to yield $184.70 to each survivor.

March 24, 1977. The Administration based its determination that Trisha was Michael's survivor on the divorce decree's declaration that Trisha had been born of Judy and Michael's marriage.

At Christine's request, a hearing concerning Trisha's status was then held on October 7, 1977 before a Social Security Administration Administrative Law Judge ("ALJ"). After receiving testimony of Christine, Judy, and Michael's mother, Lena Conlon, and reviewing documents submitted by the parties, including the Texas divorce decree, the ALJ found that Trisha was Michael's child and entitled to receive benefits. Although he found it "quite apparent that even under Texas law no marriage existed," the ALJ felt bound by the divorce decree which declared Trisha to be Michael's child.[2]

Christine brought the case before the Appeals Council of the Social Security Administration, which found that the Administration was not bound by the Texas divorce decree. There being no other sufficient evidence that Trisha was Michael's "child" under the Social Security Act, the Appeals Council reversed the ALJ and found that Trisha was not Michael's child and was therefore not entitled to survivor's benefits. The then Secretary of Health and Human Services adopted the opinion of the Appeals Council as his final decision on February 25, 1981.

Judy then filed this suit to have the Secretary's decision reversed. Both parties filed motions for summary judgment, and the district court, finding that Trisha was not Michael's "child" within the meaning of the Social Security Act, granted Christine's motion.

Our appellant, Trisha, claims that she is Michael's "child" as defined in three separate sections of the Social Security Act. We will examine each separately.

I.

Trisha first alleges that she is Michael's "child" for the purposes of section 216(h)(2)(A) of the Social Security Act, 42 U.S.C. § 416(h)(2)(A), which provides:

*"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determin-*

2. The ALJ's factual finding that Judy and Michael had never actually been married, ceremonially or at common law, is understandable and not subject to reasonable dispute on the evidence. It is undisputed that there was no ceremonial marriage. Under Texas law, the three requisites for a common-law marriage are that (1) the parties must expressly or impliedly agree to be husband and wife; (2) the parties must cohabit; (3) the parties must hold each other out as husband and wife. *Franklin v. Smalldridge,* 616 S.W.2d 655 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Morris v. Morris,* 463 S.W.2d 295 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ).

Lena Conlon, Michael's mother, testified at the hearing that although she had come to Texas to drive with her son back to Vermont when he was discharged from the Army, she never met Judy, and that Michael had never indicated that he had been married to her.

Judy testified that she had used the surname "Ellis" rather than "Conlon" during her purported marriage to Michael, that she had never introduced Michael to her parents as her husband, and did not recall Michael ever having referred to her as his wife. Additionally, Judy testified that she had not known she had had a common-law marriage with Michael until she consulted with her attorney after Michael had left for Vermont.

Among the evidence introduced at the hearing was an envelope postmarked "Grand Prairie, TX—Jul. 10, 1968," addressed to Michael in Burlington, Vermont. The return address, in Judy's handwriting, identified the sender as Judy Ellis, rather than Judy Conlon. Also introduced was a letter written the day after Trisha was born, signed by Judy's father, Mr. M.F. Ellis, and directed to Michael in Rutland, Vermont, which read, in part:

"Just thought I would let you and your parents know that you have a daughter back here in Texas. She was born . . . yesterday . . . . [A]re you going to be man enough . . . to do something about it . . . . I do want some action from you in a couple of days. This will be turned over to a Social Worker, as well as our Lawyer . . . . The solution as you know is very simple Blood Test and A Marriage license is all that is required, along with your appearance. . . ."

This and the other testimony and documentary evidence, which apparently was not before the Texas Domestic Relations Court which granted the divorce, convincingly indicates that Judy and Michael had never entered into a common-law marriage.

*ing the devolution of intestate personal property* by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, *by the courts of the State in which he was domiciled at the time of his death,* or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." (Emphasis added.)

■ Because Michael was domiciled in Vermont when he died, Trisha must be considered Michael's child if she can show that, under Vermont law, she would be considered Michael's child for purposes of determining the intestate devolution of Michael's personal property. Vermont's intestacy statute, Vt.Stat.Ann. tit. 14, § 551, provides that unbequeathed real and personal property descends in equal shares to the children of the decedent. If Vermont would consider Trisha Michael's child for such purpose, section 551 would mandate that a share of his personal property descend to her, and she would consequently also be considered Michael's child for purposes of section 216(h)(2)(A) of the Social Security Act.[3]

■ For support that she is Michael's child, Trisha turns to the Texas decree of divorce which dissolved the marriage between Michael and Judy. Trisha claims both that the decree's recitation that "there was one child born of this marriage, to-wit: TRISHA LOUISE CONLON," declares Michael's paternity of Trisha and that the full faith and credit clause of the United States Constitution makes that declaration binding on Vermont courts.

We agree that the divorce decree purports to declare Michael's paternity. In Texas, a finding in a divorce decree that a child was born of a marriage "is the equivalent to a finding that [the husband] was the father of [the child]." *Byrd v. Travelers Insurance Co.,* 275 S.W.2d 861 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.). Indeed, at oral argument, counsel for Trisha admitted that the main reason Judy filed for a divorce from Michael was to give paternity to Trisha. Although we will not here dispute the validity of the decree insofar as it declared that Judy and Michael were divorced, the grave ramifications which the paternity declaration has for Michael require that we examine it separately. The Constitution would require Vermont to give full faith and credit to the divorce decree as such, but we cannot agree with Trisha's contention that it would also require Vermont to give full faith and credit to the Texas decree's declaration of paternity.

The full faith and credit clause directs that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." U.S. Const. art. IV, § 1.[4] On its

3. Vermont Statutes Annotated, Title 14, sections 553 and 554, provide that an illegitimate child can inherit intestate personal property from her father only if:

 1. The father has been declared to be the child's putative father in a Vermont bastardy proceeding; or
 2. The father openly and notoriously claimed the child to be his own; or
 3. The parents of the child have intermarried and the child is recognized by the father as his child.

We do not understand Trisha to argue that she fits within any of these categories, nor does the evidence show that she does. Because of this, and the fact that the evidence, apart from such binding effect as may be given the March 27, 1970 decree of the Dallas County Domestic Relations Court, shows that Michael and Judy were never married (*see* note 2, *supra*), Trisha's claim to be Michael's child for purpose of section 216(h)(2)(A) ultimately depends on the effect of the March 27, 1970 decree.

4. The full faith and credit clause further provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. Pursuant to this mandate, Congress enacted 28 U.S.C. § 1738, which provides:

 "The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by

face, the full faith and credit clause might seem to require that Vermont give the Texas decree preclusive effect on the question of Michael's paternity of Trisha.

Vermont's duty to give the divorce decree's declaration of paternity full faith and credit is limited, however, by the fact that the Texas Domestic Relations Court which made the declaration, had no in personam jurisdiction over Michael.

 Michael, a resident of Vermont, was personally served in that state with the petition for divorce, but this service did not give the Texas court in personam jurisdiction over him. Trisha argues that Michael had had sufficient contacts with Texas— primarily through his relationship with Judy—to have subjected him to the jurisdiction of the Texas courts, consistent with due process. We need not decide whether Texas could have subjected Michael to in personam jurisdiction without violating his due process rights, however, because Michael was never served under a statute or rule which would have given the Texas court in personam jurisdiction over him.

"Resolution of the issue whether a state may properly assert in personam jurisdiction over a non-resident defendant involves a dual inquiry. [Citation omitted.] The first question is whether the state has by statute provided for the assertion of jurisdiction in the context of the situation under scrutiny. Assuming the initial inquiry is answered affirmatively, the question then arises whether the assertion of jurisdiction is constitu-

tionally permissible." *Rebozo v. Washington Post Co.,* 515 F.2d 1208, 1211 (5th Cir.1975).

For an out-of-state, nonresident defendant to be amenable to a court's in personam jurisdiction, "the forum state long-arm statute must assert jurisdiction over the nonresident defendant." *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581, 585 (5th Cir.1982). The plaintiff must prove that the long-arm statute in the state in which the court sits extends the court's jurisdiction over the defendant. *Familia de Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134, 1138 (5th Cir. 1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981). A court's authority to assert in personam jurisdiction over an out-of-state, nonresident defendant is limited to the scope of the state's long-arm statute, even when due process would allow more expansive jurisdiction than that for which the statute provides. *Mallard v. Aluminum Co. of Canada, Ltd.,* 634 F.2d 236, 241 (5th Cir.1981), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981).

 At oral argument, counsel for Trisha contended that in the divorce proceedings Michael had been amenable to the Texas court's in personam jurisdiction under the Texas long-arm statute, Tex.Rev. Civ.Stat.Ann. art. 2031(b).[5] He admitted, though, and the record reflects, that Michael had only been served pursuant to Rule 108 of the Texas Rules of Civil Procedure, and *not* pursuant to article 2031(b). Rule 108, however, at least prior to its amendment effective January 1, 1976,[6] was but a

affixing the seal of such State, Territory or Possession thereto.·

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or

usage in the courts of such State, Territory or Possession from which they are taken."

5. Article 2031(b) provides in part that jurisdiction shall be extended over a nonresident doing business in Texas and that a "non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

6. This amendment added to the last sentence of the rule, which provided that a defendant served thereunder would be required to respond just as if he had been personally served

procedural rule which specified the procedure to be used in serving a defendant without the state. It did not confer in personam jurisdiction over an out-of-state, nonresident defendant. *Roumel v. Drill Well Oil Co.,* 270 F.2d 550, 554 (5th Cir. 1959); *Aamco Automatic Transmissions, Inc. v. Evans Advertising Agency, Inc.,* 450 S.W.2d 769, 770–71 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (opinion for the court by then Justice Sam D. Johnson, later a Justice of the Texas Supreme Court, now a Judge of this Court); *Henry v. Reno,* 401 S.W.2d 118, 119 (Tex.Civ.App. —Eastland 1966, writ ref'd n.r.e.); *Risch v. Risch,* 395 S.W.2d 709 (Tex.Civ.App.—Houston 1965, writ dism'd), *cert. denied,* 386 U.S. 10, 87 S.Ct. 881, 17 L.Ed.2d 703 (1967); *Bonanza, Inc. v. Lee,* 337 S.W.2d 437, 439–40 (Tex.Civ.App.—Dallas 1960, no writ). *See also Placid Investments, Ltd. v. Girard Trust Bank,* 662 F.2d 1176, 1179 (5th Cir. 1981), *vacated and remanded on other grounds,* 689 F.2d 1218 (5th Cir.1982) (post-1976 Rule 108). *But cf. Miller v. Cowell,* 362 S.W.2d 345 (Tex.Civ.App.—Houston 1962, no writ) (Rule 108 service on Texas resident while temporarily out of state confers in personam jurisdiction). Therefore, service of process on Michael, pursuant only to the pre-1976 version of Rule 108, was ineffective to confer personal jurisdiction over him on the Texas court.[7]

The failure of the Texas Domestic Relations Court to obtain in personam jurisdiction over Michael did not render the divorce decree null insofar as it purports to terminate any marital relationship between Michael and Judy. Generally a divorce decree rendered by a court in a state in which one spouse was domiciled must be given full faith and credit by another state, even if the court rendering the decree did not have jurisdiction over the spouse not domiciled in the state. *Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942).

Indeed, the enactment in 1975 of a long-arm statute covering the parent-child relationship, section 11.051 of the Texas Family Code, may have been the Texas Legislature's solution to the problem of the Texas courts' inability to obtain jurisdiction over nonresident, absent, putative fathers. *See* Sampson, *Long-Arm Jurisdiction Marries the Texas Family Code,* 38 Tex.B.J. 1023 (1975). This new long-arm statute, section 11.051, provides in part that

"[i]n a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required . . . although the person is not a resident or domiciliary of this state, if:

"(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

". . . .

"(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of personal jurisdiction."

If Judy had sought a divorce and declaration of paternity after section 11.051 had been enacted, the statute apparently would have given the Texas courts jurisdiction over Michael for paternity determination purposes, and service could have been perfected under Rule 108 (at least as amended effective January 1, 1976). *See Zeisler v. Zeisler,* 553 S.W.2d 927 (Tex.Civ. App.—Dallas 1977, writ dism'd).

---

"within this State," the words "to the full extent that he may be required to appear and answer under the Constitution of the United States in an action either in rem or in personam." The notes contained in the Texas Supreme Court's order adopting this amendment to Rule 108 state that "[i]ts purpose is to permit acquisition of *in personam* jurisdiction to the constitutional limits." *Civil Procedure Rules Amended—Official Court Order,* 38 Tex. B.J. 823, 824 (1975). This purpose of the amendment was specifically recognized in *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 n. 1 (Tex.1977).

7. We note, further, that even if Michael had been served pursuant to article 2031(b), the Domestic Relations Court would not have obtained the personal jurisdiction over him necessary for a paternity determination. Counsel for Trisha contended at oral argument that Michael's alleged impregnation of Judy was a tort and was therefore covered by the statute's provision conferring Texas court jurisdiction over a person who commits a tort in Texas. Texas courts, however, have held that article 2031(b) cannot be the basis for extending personal jurisdiction over a nonresident putative father in a paternity proceeding alleging that the child was conceived in Texas. *Taylor v. Texas Department of Public Welfare,* 549 S.W.2d 422, 424 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.); *Postell v. Texas Department of Public Welfare,* 549 S.W.2d 425 (Tex. Civ.App.—Fort Worth 1977, no writ).

A decree of divorce granted by a court which had no in personam jurisdiction over one spouse is not, however, conclusive as to all the accoutrements of marriage. Rather, a court's decree of divorce is separable from its declarations in that decree regarding the incidents of marriage, including alimony, support, custody, and paternity.

The concept of divisible divorce first appeared in *Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). In *Estin,* the Supreme Court examined the applicability of the full faith and credit clause to a Nevada divorce decree which had been rendered by a court which had had no jurisdiction over the out-of-state wife. The decree had provided that the husband was to pay no support to the wife. This declaration conflicted with a New York court order, previously issued in the wife's earlier New York separation action, which had required the husband to pay $180 per month alimony to his wife.

The suit before the Supreme Court was an appeal in the wife's subsequent action in New York for the husband's violation of the earlier New York support order. The Supreme Court found that although the New York court was constitutionally required to give full faith and credit to the Nevada divorce decree insofar as it dissolved the marriage, the Nevada decree's determination regarding support was not entitled to full faith and credit.

The New York judgment which had awarded support was a property interest of the wife. *Id.* at 548, 68 S.Ct. at 1218. As a property interest, it was a personal right of the wife which could not have been altered by a court that had not obtained in personam jurisdiction over her. Nevada's decree purporting "to wipe out" the wife's claim for alimony was

"... nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an in personam jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York

judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution and statute of the United States demand." *Id.* at 549–50, 68 S.Ct. at 1218 (citations omitted).

■ Likewise, a wife's right to maintenance is a personal right which cannot be terminated by an *ex parte* divorce decree, issued by a court which had no in personam jurisdiction over her. *Meredith v. Meredith,* 226 F.2d 257 (D.C.Cir.1955). *See also May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (where Wisconsin court rendering divorce decree had not had jurisdiction over the wife, Ohio was not required to give full faith and credit to the Wisconsin decree insofar as it awarded custody of the couple's three children to the husband). *Accord, Gunther v. Gunther,* 478 S.W.2d 821 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

In *Risch v. Risch, supra,* the wife, a Texas resident, commenced a divorce action in the Texas courts and procured personal service of process, apparently pursuant to Rule 108, Texas Rules of Civil Procedure, on her husband, who was not a Texas resident, in Singapore, Malaysia. It was held that the court did not acquire in personam jurisdiction over the husband and hence, though it had jurisdiction to grant the divorce, lacked jurisdiction to order the husband to pay child support. As both the *Risch* case and Judy's divorce suit against Michael were concluded before the enactment of section 11.051 of the Texas Family Code (*see* note 7, *supra*) and before the above-referenced amendment to Rule 108, Texas Rules of Civil Procedure (*see* note 6, *supra*), *Risch*'s holding that the Texas divorce court did not acquire in personam jurisdiction over the nonresident father demonstrates that in Judy's divorce suit the Dallas County, Texas Domestic Relations Court did not acquire in personam jurisdiction over Michael. *Risch* also stands for the broader proposition that Texas recognizes the divisible divorce concept, and that though in personam

jurisdiction over both spouses is not necessary to render a divorce, nevertheless in personam jurisdiction is required over a spouse in order to otherwise adversely affect the personal or property rights of that spouse.

Under the divisible divorce concept, whether Vermont would be required to give the Texas divorce decree's paternity declaration full faith and credit turns on whether that declaration affected any property interests or personal rights of Michael, over whom, as noted above, the Texas court had no in personam jurisdiction. We are confident that an action for paternity affects a putative father's personal rights, is therefore an action in personam, and, consequently, requires that the court determining paternity obtain personal jurisdiction over the alleged father.

The paternity declaration affects the distribution and descent of the father's property should he die intestate. A binding declaration of Michael's paternity of Trisha in this instance, for example, would have affected his right, if he died intestate, to have his property descend in equal shares to his two children by his wife Christine. Instead, the property would descend, possibly contrary to his desires, in equal shares to his two children by Christine and to Trisha, whom the Texas court had declared to be his child. That the Texas declaration of paternity could have such highly significant consequences for Michael's property would seem to mandate a characterization of the paternity determination as an in personam action requiring personal jurisdiction over the putative father.

Beyond this, in Texas, when the father is a party to a divorce action in which the resulting decree declares the father's paternity, the paternity finding is *res judicata,* and can subject the father to a later action for support.[8] *Byrd v. Travelers Insurance Co.,* 275 S.W.2d 861, 863 (Tex.Civ. App.—San Antonio 1955, writ ref'd n.r.e.). We believe that from this proposition, the

following reasoning of Justice Traynor from *Hartford v. Superior Court for the County of Los Angeles,* 47 Cal.2d 477, 304 P.2d 1 (1956), a paternity suit, follows:

"[I]f. the purpose of the present action were to enforce a duty of support or some other personal obligation growing out of the parent-child relationship, personal jurisdiction over defendant would be essential. [Citations omitted.] This requirement cannot be avoided by limiting the relief sought to a binding adjudication of the parties' status [*i.e.,* paternity], since such an adjudication would prevent relitigation of the basic issue on which defendant's personal obligations to plaintiff must rest and to that extent would necessarily constitute a personal judgment against him. [Citations omitted.]" *Id.* at 5.

A Texas court has stated that:

"[i]f a court has jurisdiction over the resident spouse, it may render a valid and binding divorce over the non-resident spouse after notice and hearing since it is not exercising personal jurisdiction, but is instead exercising jurisdiction over the subject matter, namely, the marital status of its citizens. *However, before judgment affecting the parent-child relationship of the non-resident defendant will be entitled to full faith and credit in a foreign jurisdiction, the court rendering the decree must first acquire personal jurisdiction over the non-resident defendant because the non-resident defendant is thereby subjected to an in personam judgment.*" *Butler v. Butler,* 577 S.W.2d 501, 505 (Tex.Civ.App.—Texarkana 1978, writ dism'd) (citing *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953)) (emphasis added).

Finally, Texas appellate courts have dismissed three paternity suits on the grounds that the trial courts had not had personal jurisdiction over the putative fathers. *In the Interest of D.N.S.,* 592 S.W.2d 35 (Tex.

---

**8.** Section 12.04 of the Texas Family Code provides that a child's parent has "(3) the duty to support the child, including providing the child with clothing, food, shelter, medical care, and education . . . ."

Civ.App.—Beaumont 1979, no writ) ("[t]he mother has not alleged facts showing ... that the court had jurisdiction to render an in personam judgment"); *Taylor v. Texas Department of Public Welfare,* 549 S.W.2d 422 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.); *Postell v. Texas Department of Public Welfare,* 549 S.W.2d 425 (Tex.Civ. App.—Fort Worth 1977, no writ). *See also* A. Ehrenzweig, *A Treatise on the Conflict of Laws,* 80 & n. 17 (1962); H. Clark, *The Law of Domestic Relations in the United States,* 165 & n. 27 (1968), and cases cited therein.

■ The conclusion implicit in the foregoing may not properly be avoided by asserting that the only part of the Texas divorce court's judgment which is to be given preclusive effect is its determination that Judy and Michael were married for some continuous period of time ending with the date of the divorce decree. If a valid marriage were so established, then there would be·other evidence showing that Trisha was the child of that marriage, and was hence Michael's legitimate daughter. However, to the extent that legal paternity depends on the existence of a valid marriage, then such an approach is but an indirect method of giving the divorce decree preclusive effect on the issue of legal paternity. While Judy's Texas domicile sufficed to give the Texas court in rem jurisdiction to grant her requested divorce from Michael, and in personam jurisdiction over Michael was not necessary for that purpose, it does not follow that in personam jurisdiction over Michael was not required for a determination, binding on him, Christine, and their children, that he was married to Judy. As Justice Traynor explained in *Hartford v. Superior Court, supra:*

"The severing of a relationship or an adjudication that it never existed for the purpose of establishing the parties' freedom from it in the future is not the same thing, however, as creating it or establishing its present existence. [Citation omitted.] Thus it has been recognized that a decree of divorce is a judgment in rem only to the extent it determines that the parties are thereafter free to remarry and is in personam to the extent it determines that a marriage existed at the time it was entered. [Citation omitted.] Basically the difference is between the state's power to insulate its domiciliary from a relationship with one not within its jurisdiction and its lack of power to reach out and fasten a relationship upon a person over whom it has no jurisdiction." *Id.* at 4–5.

*See also Brondum v. Cox,* 292 N.C. 192, 232 S.E.2d 687, 692 (1977) (quoting with approval from *Hartford,* including the first and last sentences above-set out). Paraphrasing *Hartford,* then, the Texas court had the power, at the suit of Texas resident Judy, to establish her freedom from any marital relationship with Michael, but it had no power to fasten a marital relationship upon nonresident Michael without having properly acquired personal jurisdiction over him.

■ We must conclude, then, that the 1970 suit in the Texas Domestic Relations Court, insofar as it relates to establishing Michael's relationship to Trisha, was an in personam action which required that the court obtain personal jurisdiction over Michael. Because the Texas court did not have personal jurisdiction over Michael, its decree would not be entitled to full faith and credit by the Vermont courts in respect to establishing Michael's relationship to Trisha. Under the doctrine of divisible divorce and full faith and credit, Vermont only gives a sister state's divorce decree the same validity and effect as it would be given in the state in which it was entered. *Taddeo v. Taddeo,* 141 Vt. 120, 446 A.2d 360, 362 (1982) (citing *Ford v. Franklin,* 129 Vt. 114, 274 A.2d 461, 464–65 (1971); *Loeb v. Loeb,* 118 Vt. 472, 114 A.2d 518, 524 (1955)). *See also Morris v. Morris,* 118 Vt. 270, 108 A.2d 258, 259 (1954) (recognition of divisible divorce concept in context of out-of-state *ex parte* divorce). Because the Texas Domestic Relations Court had no personal jurisdiction over Michael, Texas would not view that court's determinations relating to the establishment of Michael's relationship to Trisha as valid, and neither, therefore, would Vermont. Consequently,

Vermont would not regard Trisha as Michael's child by virtue of the Texas decree or the determinations made therein, and, under Vermont descent and distribution laws, none of Michael's personal property would descend to Trisha. As a result, Trisha does not come within the definition of "child" for section 216(h)(2)(A) of the Social Security Act, since she is not one to whom Michael's intestate personal property would devolve. The district court's determination that section 216(h)(2)(A) did not entitle Trisha to receive survivor's benefits was correct.

## II.

■ Trisha also contends that because the Texas Domestic Relations Court declared in the divorce decree that Michael was her father, she is a "child" for purposes of 42 U.S.C. § 416(h)(3)(C)(i)(II), which states:

"(3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be *deemed to be the child of such insured individual* if;

"....

"(C) *In the case of a deceased individual—*

"(i) *such insured individual—*

"....

"(II) *had been decreed by a court to be the father of the applicant,* ...

"and such ... court decree ... was made before the death of such insured individual ...." (Emphasis added.)

In evaluating this contention, the district court examined this provision's legislative history, S.Rep. No. 404, *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 2049–50, and determined that Congress had enacted the subsection "to eliminate the inequity which resulted from the application of the various state intestacy laws under § 216(h)(2)(A)." Neither the statute's language nor this legislative history suggested to the district court that the Secretary of

Health and Human Services was bound by a paternity decree rendered by a court which had had no personal jurisdiction over the nonresident alleged father.

We agree with the district court. The Texas Domestic Relations Court's failure to obtain personal jurisdiction over Michael in the in personam paternity-related determinations makes those determinations ineffective for the purposes of this section of the Social Security Act concerning court decrees. We must presume that in using the term "decreed by a court," Congress did not mean that the Secretary should be controlled by decrees that could not withstand attacks on their jurisdictional bases. We hold that the Secretary was correct in refusing to be bound by the divorce decree so far as it might establish that Michael was Trisha's father.

## III.

Finally, Trisha asserts that she is Michael's child for the purposes of sections 202(d)(1) and (3) of the Social Security Act, 42 U.S.C. §§ 402(d)(1) and (3), which provide:

"(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

"....

"(C) was dependent upon such individual—

"....

"(ii) if such individual has died, at the time of such death, ...

"shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits ....

"....

"(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individ-

ual was not living with or contributing to the support of such child and—

"(A) such child is neither the legitimate nor adopted child of such individual . . . ."

Trisha was not in fact dependent upon, or being furnished any support by, or living with, Michael at or about the time of his death, and he had never adopted her. However, Trisha claims that she is the legitimate offspring of Michael and Judy's marriage and that she hence fits within section 402(d)(3)(A), and is therefore Michael's dependent child and entitled to benefits.

■■■ Trisha, however, misconstrues both the language and the purpose of this section. Section 402(d) does not define the term "child" for purposes of the Social Security Act. Instead, it places restrictions on which children may receive benefits. It provides that only a child who was *dependent* on a wage earner may receive benefits. § 402(d)(1)(C). *Norton v. Mathews,* 427 U.S. 524, 526 n. 1, 96 S.Ct. 2771, 2773 n. 1, 49 L.Ed.2d 672 (1976). *See also Mathews v. Lucas,* 427 U.S. 495, 498 n. 1, 96 S.Ct. 2755, 2759 n. 1, 49 L.Ed.2d 651 (1976). It then defines dependency by stating that a legitimate child of a wage earner will be deemed to have been dependent on the wage earner. § 402(d)(3)(A). But the section states that the term "child," as used in section 402(d), is defined in section 416(e). Therefore, a conclusion that the claimant is a "child" under section 416(e) is a prerequisite to a determination of whether a "child" is dependent on a wage earner under section 402(d). Only if Trisha could show that she was Michael's child under section 416(e), could she qualify for benefits under section 402(d). We turn now to section 416(e).

Section 416(e) primarily places stepchildren and certain grandchildren within the definition of "child." Only subsection (1), which states that "[t]he term 'child' means (1) the child or legally adopted child of an individual," is applicable to Trisha. One might conclude from a cursory glance at this definitional tautology—a "child" is a child—that it does not provide much guidance. Section 416(e)(1) is, however, modi-

fied by sections 416(h)(2) and (3) which provide the final words on who is to be considered a child for purposes of section 416(e)(1). The only possible categories of sections 416(h)(2) and (3) into which Trisha could fit, and the only categories into which she alleges that she fits, are delineated in section 416(h)(2)(A) and section 416(h)(3)(C)(i)(II). We examined the former provision in Part I of this opinion and determined that Trisha was not Michael's child under this provision because, under Vermont law, she would not be considered Michael's child for purposes of determining the intestate devolution of Michael's personal property. In Part II of this opinion, we evaluated Trisha's claim under section 416(h)(3)(C)(i)(II) and determined that the Texas Domestic Relations Court's decree was ineffective to bring Trisha within that section.

■■■ In the end, because Trisha does not fit within the definition of a "child" under either section 416(h)(2)(A) or section 416(h)-(3)(C)(i)(II), she would not be considered a child under section 416(e). Because the use of the term "child" in section 402(d) is explicitly limited by the definition in section 416(e), Trisha's failure to come within the contours of section 416(e) also renders her claim under section 402(d) unsuccessful.

Finding that Trisha's claims under the three statutory provisions, section 402(d), section 416(h)(2)(A), and section 416(h)(3)(-C)(i)(II), must fail, we affirm the district court's grant of summary judgment denying survivor's benefits to Trisha.

AFFIRMED.