# Supreme Court of the Navajo Nation

---

### In the Matter of Custody of: S.R.T.
### Decided August 23, 1991

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

F. Douglas Moeller, Esq., Farmington, New Mexico, for the Petitioner; and Levon B. Henry, Esq., DNA-People's Legal Services, Inc., Shiprock, Navajo Nation (New Mexico), for the Respondent.

Opinion delivered by TSO, Chief Justice.

This case comes before the Court on a petition for writ of prohibition to the Shiprock Family Court. Petitioner, Stanley Barron, asserts that the courts of the Navajo Nation lack jurisdiction to hear a matter involving custody of a child, who is an enrolled member of the Navajo Tribe of Indians, but who resides outside the territorial jurisdiction of the Navajo Nation.

We hold that the Shiprock Family Court has jurisdiction over the child custody matter, pursuant to the Navajo Nation Children's Code, and deny the petition for writ of prohibition.

### I

This case involves a two-year old child who is an enrolled member of the Navajo Tribe. The child's natural mother (respondent), also an enrolled member of the Navajo Tribe, resides and is domiciled on the Navajo Reservation in Shiprock, Navajo Nation (New Mexico). The child's putative father (petitioner) is a non-Indian, non-resident of the Navajo Reservation. The child was residing in Texas either with the petitioner or petitioner's sister when the matter was initially brought before the Navajo family court in Shiprock.

This proceeding began on October 16, 1990, when the child's mother filed a petition for permanent custody of her child in the Shiprock Family Court. On the same day, the mother also filed a motion for immediate temporary custody. On October 22, 1990, the child's mother was granted temporary custody of the child which was to be effective until the final custody determination was made.

On October 25, 1990, the clerk of the family court scheduled a final hearing on the custody matter for 9:00 a.m., November 20, 1990, and on the same date served a copy of the notice of final hearing on respondent's counsel. Petitioner was not served because he had not entered an appearance at the time the clerk

served the respondent.

Copies of the petition for permanent custody, the order granting temporary custody, and the notice of final hearing were sent by certified mail to petitioner in Rails, Texas, by respondent's counsel on November 7, 1990. Included also was a short letter explaining that the final hearing was scheduled for November 20, 1990 at 9:00 a.m., and that pursuant to the temporary custody order petitioner was to return the child to the mother. Petitioner ignored the immediate temporary custody order.

On November 16, 1990, F. D. Moeller, an attorney practicing in Farmington, New Mexico, entered his appearance as petitioner's counsel in the family court.

On November 21, 1990, Moeller mail-filed a motion "to continue the hearing scheduled for November 19, 1990." As grounds for the motion Moeller stated that he had been "in South America from the 9th of November through the18th of November" and that he had "received notice of this hearing by phone from his client and was not informed of such hearing until November 19th at 8:00 when advised of such notice by his secretarial staff." Moeller alleged that the family court lacked jurisdiction and requested more time. The certificate of service on the motion contains a service date of November 19, 1990 and a statement that opposing counsel had been contacted and "objects to this motion to continue."[1]

The petition for permanent custody was heard on November 20, 1990. Neither the petitioner nor his counsel appeared before the family court. The mother and her attorney appeared at the hearing and presented testimony. As part of its findings, the court found that the child "was born out of wedlock to petitioner as verified by petitioner's testimony and by ... a certified copy of the child's birth certificate." The court also found the child's domicile to be the same as the mother's. The court further found that petitioner had been notified of the final hearing, however, he had not appeared. The court concluded that it had jurisdiction over the child pursuant to the Navajo Nation Children's Code. The family court awarded permanent custody of the child to the mother.

The petitioner filed this petition for writ of prohibition on December 27, 1990. Petitioner seeks relief from the custody order arguing that he could not come on the Navajo Reservation to contest jurisdiction without losing custody of his child.

On December 19, 1990, the child's mother filed an application for a temporary writ of attachment and writ of habeas corpus with the 72nd Judicial District Court of Crosby County, Texas to compel the return of the child to her. On December 20, 1990, the Texas court found that the child's natural mother was "the person entitled by law and a foreign child custody decree [the decree of the Shiprock Family Court]" to custody and ordered petitioner to immediately deliver the child to the mother's possession.

---

1. Why Moeller decided to mail, and not file in person, the motion to continue on the date he believed the hearing was scheduled (November 19th) is not clear, especially when Farmington is less than an hour's drive from the Shiprock Family Court. We assume that after Moeller had been informed by three sources, he knew the final hearing was scheduled for November 20th and not November 19th.

## II

A proceeding for a writ of prohibition may be used to test the jurisdiction of a court. *Yellowhorse v. Window Rock Dist. Ct.*, 5 Nav. R. 85 (1986). A writ of prohibition will be issued as a matter of right if the lower court clearly has no jurisdiction. *Yellowhorse*, 5 Nav. R. at 87. In *McCabe v. Walters*, 5 Nav. R. 43, 47 (1985), this Court said, "[a] Writ of Prohibition is a discretionary writ and is appropriately issued where the trial court is proceeding without or in excess of its jurisdiction ... and Petitioner has no plain, speedy, and adequate remedy at law." (citation omitted). This Court's denial of petitioner's appeal from the Shiprock Family Court's order finding jurisdiction over this matter sufficiently justifies deciding the jurisdictional issue raised here.

## III

Jurisdiction of the Navajo family courts regarding child custody matters is governed by the Navajo Nation Children's Code, 9 N.T.C. §§ 1001 - 1445 (Supp. 1984 - 85)

> The Children's Court [now known as the family court] may hear child custody matters involving Navajo children wherever they may arise. The Court may decline jurisdiction in appropriate circumstances where a forum with concurrent jurisdiction is exercising its authority.... The Children's Court shall have exclusive jurisdiction over any Navajo child who resides or is domiciled within the borders of Navajo Indian country....

9 N.T.C. § 1055(d). There is no dispute that the child, S.R.T., is a Navajo child. The child is an enrolled member of the Navajo Tribe and is under the age of eighteen years. 9 N.T.C. § 1002(6); *In re A.O.*, 5 Nav. R. 121, 123 (1987) (a child who is one-half blood Navajo and is enrolled in the Navajo Tribe is a Navajo child).

The Navajo Nation Children's Code further provides that "[t]he domicile of a child born out of wedlock is that of the natural mother unless otherwise established in the father." 9 N.T.C. § 1002 (19). For purposes of this petition, the question of whether the child was born out of wedlock is crucial, because if the child was not born out of wedlock the Navajo Nation Children's Code is inapplicable.

Petitioner argues that the child was not born out of wedlock because Texas law provides that a man and a women are married, if they agree to be married, and after the agreement they live together in the State of Texas as husband and wife and represent themselves to others as married. The respondent generally agrees that those are the elements of a common-law marriage and Texas does recognize common-law marriage. *Conlon v. Heckler*, 719 F.2d 788 (5th Cir. 1983); *Claveria v. Claveria*, 615 S.W.2d 164 (Tex. 1981) .

While the petitioner correctly states the Texas law on common-law marriage, he did not present any evidence to the family court or to this Court that he and

petitioner are married by common-law. In fact, the respondent has denied any such relationship from the beginning. For example, she pointed out to the trial judge that, after living briefly with her, the petitioner began cohabitating with another woman. Affidavit of Respondent at 2 (October 18, 1990). Unless the law of Texas permits plural common-law marriage, which we assume the state does not, this fact alone destroys petitioner's argument that he and respondent have a common-law marriage. The parties before the Court obviously never intended to be married, even under Texas law.

The evidence properly before this Court reinforces respondent's position that the parties never had a common-law marriage under Texas law. The uncontroverted evidence in the record shows the following: (1) The respondent vigorously denies that she is married, by common-law or otherwise, to petitioner; (2) The respondent did not adopt the petitioner's last name to reflect a marriage; (3) The child's last name is the same as respondent's; (4) The petitioner's name does not appear on the child's birth certificate as the child's father; (5) The parties did not at anytime file a declaration of informal marriage with any county clerk of Texas pursuant to Texas statutory law, Tex. Fam. Code Ann. § 1.92; and (6) We conclude, after reviewing the Texas decree ordering the return of the child, that petitioner's common-law marriage argument was rejected by the Texas court.

The family court is correct. The parties do not have a common-law marriage. They merely lived together for a short time in Texas as testified to by the respondent, and under Texas law, merely living together and having intimate relations, without more, does not make that couple husband and wife. *Johnson v. State*, 54 S.W.2d 140, 141 (Tex. 1932). We therefore agree with the family court that the child was born out of wedlock.

The petitioner next contends that he has acknowledged the child to be his son, and because the child is in Texas where petitioner has established his residence, the child's domicile is in Texas. Again, no evidence (aside from the note discussed below) supporting this general statement was brought by petitioner before either this Court or the Shiprock Family Court.

The petitioner attached a handwritten, copied note to his brief to this Court to show his alleged acknowledgment of paternity. The note appears to grant petitioner's sister permission to take his "son" in for immunization shots. According to petitioner, this note establishes his paternity as the child's father. This note is a curious document. It was not introduced into evidence before the family court; therefore, it is improperly before this Court. In spite of that we will examine it. It has what purports to be a notary seal, but there is no proper jurat. It is undated as well. On the whole, the document may be a power of attorney to permit a family member to give medical consent for the child's vaccination. It is not, of itself, an acknowledgment of paternity. Although relevant to the issue of acknowledgment, the document is not reliable as evidence of paternity.

The petitioner has not introduced prima facie evidence that he is indeed the father of the child. Thus, because petitioner did not prove paternity, we need not

reach the issues of whether the child's domicile has been established in him and whether he has sufficient contacts with the Navajo Nation to assert jurisdiction of the Navajo Nation courts over him. We agree with the family court that the domicile of the child is the same as the natural mother.

The petitioner argues that this case is governed by the Navajo court decisions in *Frejo v. Barney*, 3 Nav. R. 237 (Window Rock D. Ct., 1982), and *Yazzie v. Yazzie*, 5 Nav. R. 66 (1985). We disagree. *Frejo* answers the question of whether the Navajo court should assert jurisdiction over a petition to modify a child custody decree entered by the State of New Mexico following a divorce of the parents in that state's court. All the parties, including the children, resided within the Navajo Nation. In *Yazzie* the issue was whether the Navajo court had jurisdiction to determine child custody as part of a divorce proceeding where the children did not reside on the Navajo Nation. In both of these cases the parents had been legally married, the children were not born out of wedlock, and there was no question as to paternity. These cases are inapplicable to the facts of this case.

It is important to note that the petitioner has also challenged the jurisdictional issue raised here in the 72nd Judicial District Court of Crosby County, Texas. That court's finding that the child's natural mother is the person entitled by law and decree of the Navajo Nation family court to custody of the child further evinces that all manner of due process has been afforded the petitioner. Furthermore, it is clear from that court's order to return the child to respondent that the petitioner has no legal right to custody.

It is also important to note what we do not address here. That is the issue of whether the Navajo Nation courts may recognize a valid common-law marriage consummated in a foreign jurisdiction, such as Texas, that recognizes common-law marriage. We leave that question for a future case. We state only that Navajo law does not recognize an alleged common-law marriage entered into within the territorial jurisdiction of the Navajo Nation. *In re Validation of Marriage of Francisco*, 6 Nav. R. 134 (1989).

There are unique issues in the area of jurisdiction over Indian children. They are not simply children in a general population, but have special status as members of Indian tribes, and they are eligible for the protection of those tribes and their traditional social structures. See 9 N.T.C. § 1001(1) (responsibility of the Navajo Nation to children). There is no resource more vital to the continued existence and integrity of the Navajo Nation than our children. Consequently, we have a special duty to ensure their protection and well-being.

## IV

The petitioner hints that he may have been denied due process because his counsel was not served with notice of the final hearing scheduled for November 20, 1990.

There is proof in the record that petitioner himself was served, through certified mail, with a copy of the notice of final hearing showing the date and time of the hearing. This type of service by respondent's counsel on petitioner himself is sufficient because no evidence was properly presented to the family court to suggest that petitioner was the father of the child or otherwise had an interest in the case. Petitioner's counsel also admits that petitioner advised him of the hearing date over the telephone. Furthermore, petitioner's counsel was informed by his office staff of the hearing date. These facts show that petitioner had notice of the final hearing. In the face of such notice, petitioner simply chose not to appear. The record discloses that when he did submit pleadings, including the one contesting the family court's jurisdiction, they were filed a day after the final hearing had taken place. Petitioner's neglect is not the fault of the family court or respondent.

## V

The Shiprock Family Court has exclusive jurisdiction over this matter pursuant to 9 N.T.C. §§ 1055(b) (3) and 1055(d), because the Navajo child born out of wedlock to a Navajo mother is domiciled within the borders of the Navajo Indian Reservation. The petition for writ of prohibition is denied.